576 So.2d 1025 (1991)
Max D. EVANS and Joyce H. Evans
v.
GRAVES PONTIAC-BUICK-GMC TRUCK, INC.
No. CA 89 1092.
Court of Appeal of Louisiana, First Circuit.
March 5, 1991.
Rehearing Denied April 18, 1991.
Writ Denied June 14, 1991.
*1026 Jerry Finley, Denhan Springs, for plaintiffs-appellees Max Evans and Joyce H. Evans.
William A. Morvant, Baton Rouge, for defendant-appellant Graves Pontiac-Buick-GMC Truck, Inc.
Thomas Kirkpatrick, Baton Rouge, for Ins. Co. of North America.
Before COVINGTON, C.J., and LANIER and GONZALES, JJ.
LANIER, Judge.
This action is a suit which cumulates a cause of action in contract for damages arising from an alleged breach of contract with causes of action in tort for wrongful conversion and violation of Louisiana and United States consumer credit laws. Suit was filed by Max and Joyce Evans (the Evans) against Graves Pontiac-Buick-GMC Truck, Inc. (Graves).[1] The trial court found that: (1) Graves sold the Evans a 1988 pick-up truck on May 19, 1987, and the Evans sold Graves a 1985 pick-up truck that same date, (2) the sale was not subject *1027 to any suspensive or resolutory conditions, and (3) Graves did not violate the consumer credit laws. The trial court rendered judgment against Graves for $9,900.05. Graves took this suspensive appeal. The Evans answered the appeal seeking an increase in the amount of damages and a reasonable attorney fee.

FACTS
On May 19, 1987, Max and Joyce Evans went to Graves in Clinton, Parish of East Feliciana, Louisiana, to purchase a new pick-up truck. They were met by Robert Rawlins, a salesperson at Graves. They had in their possession a pre-approved credit certificate from General Motors Acceptance Corporation (GMAC) for $14,000. Following negotiations with Rawlins, Trey Windom and Cecil Graves, it was agreed that the Evans would purchase a 1988 GMC High Sierra pick-up truck for a price of $14,885. As part of the purchase agreement, the Evans agreed to trade in their 1985 Chevrolet diesel pick-up truck and apply the $500 cash rebate to the purchase price of the new vehicle. The Evans had an outstanding balance of $7,256 on the 1985 pick-up truck which was being financed by GMAC. Graves appraised the 1985 Chevrolet truck at $6,900.05, which was $355.95 less than the amount still owed. The total amount to be financed, including taxes, licenses and all other charges, was $15,447.45.
Various purchase and credit application documents were signed on the afternoon of May 19th. The Evans were not given copies of these documents. It was agreed by the parties that the Evans would take the new truck home that evening and return it to Graves the following day (May 20th) to have a bumper installed on it.
The Evans sought financing for this transaction from GMAC. Graves transmitted the Evans' credit application to GMAC on May 20th. On that same date, GMAC declined to loan the amount requested and so advised Graves. GMAC has not been made a party to this suit.
The Evans returned the 1988 GMC truck to Graves on May 20th, but Graves refused to allow them to take permanent possession of the vehicle. The Evans were told that GMAC refused to approve financing for the amount requested.
On May 21, 1987, a written demand was made upon Graves by Joyce Evans for return of the 1988 GMC truck and for copies of all documents relating to the sale of the 1988 GMC truck. The Evans never made demand for the return of the 1985 truck. Graves refused to give Mrs. Evans copies of the documents and did not return the 1988 GMC truck.

ADMISSIBILITY OF EVIDENCE TO PROVE CONTENTS OF DOCUMENT
(Evans' Assignments of Error 13 and 14)
The Evans contend the trial court committed error when it allowed the employees of Graves to testify about blank documents to show the agreements of the parties and allowed the introduction of those blank documents, Exhibits D-1 and D-2, into evidence.
Under La.C.E. 1004(1), the original of a document is not always required to prove the contents of a document and other evidence of the contents of a writing, recording or photograph is admissible if all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith.
The original documents in this action were destroyed by employees of Graves when GMAC failed to approve the financing arrangement for the sale of the truck. Trey Windom, Graves's finance manager, testified that when GMAC failed to approve the financial arrangement submitted by the Evans and Graves, the original documents were thrown away. Cecil Graves testified that the documents were thrown away 2 or 3 days after the transaction was signed because the deal was getting nowhere. Although the trial judge found "the explanation of Mr. Windom, as to why the executed documents were destroyed, is [was] not satisfactory", he did not find the employees of Graves were in bad faith. Since the trial court did not find *1028 the employees of Graves in bad faith, Exhibits D-1 and D-2 were properly admitted into evidence for the purpose of reconstructing the original agreement. Trey Windom testified the blank forms filed in evidence were identical to those destroyed, except for the word "Buick".
These assignments of error are without merit.

CROSS-EXAMINATION AND LEADING QUESTIONS

(Evans' Assignment of Error 12)
The Evans contend the trial court committed error when it refused to allow their attorney to cross-examine and ask leading questions of employees of Graves. La.C.E. art. 611 states that interrogation may be by leading questions when a party calls an adverse party or a witness identified with an adverse party. See also La. C.E. art. 607.
Although the trial court erred when it refused to allow the attorney for the Evans to cross-examine and ask leading questions of Cecil Graves, it was harmless error. Cf. Crochet v. Eaglin, 532 So.2d 313 (La.App. 3rd Cir.1988).
This assignment of error is without merit.

PARTICIPATION IN THE TRIAL BY AN ATTORNEY FOR A NON-PARTY

(Evans' Assignment of Error 11)
The Evans contend the trial court committed error when it allowed an attorney who did not represent either party in the lawsuit to question witnesses.
At trial, Mr. Thomas Kirkpatrick appeared and was identified by Graves' attorney as "counsel of record". Mr. Kirkpatrick did not represent either the Evans or Graves in this case. The record indicates he represented the Insurance Company of North America (INA). Although INA was the insurer of Graves, it was never made a party to this action.
An action incidental to the principal demand may be instituted against an adverse party, a co-party or against a third person. Incidental demands are reconventional demands, cross claims, interventions and demands against third parties. La.C.C.P. art. 1031. La.C.C.P. art. 1091 provides that a third person may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereof. However, according to La.C.C.P. art. 1032, an incidental action shall be commenced by a petition which shall comply with the requirements of La.C.C.P. art. 891.
Although INA as the insurer of Graves had an interest in the pending action, it was not made a party to this action by intervention or otherwise. Further, Mr. Kirkpatrick was never enrolled as counsel of record.
The trial court erred in allowing Mr. Kirkpatrick to question witnesses; however, this error is harmless because the evidence brought out by Mr. Kirkpatrick was cumulative and did not harm the Evans.
This assignment of error is without merit.

VALIDITY OF THE SALE

(Graves's Assignment of Error 1)
Graves contends the trial court committed error in holding that the contract herein was not subject to a suspensive or resolutory condition; i.e., GMAC's approval of the financing arrangement.
A contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to obtain ownership of the thing. Three circumstances must exist for perfection of the contract: the thing sold, the price and consent. La.C.C. art. 2439. A conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive. La.C.C. art. 1767. The obligation subject to a condition in this case is the sale of the 1988 GMC truck. The approval of financing by GMAC was the uncertain event *1029 which suspended enforcement of the sale. Max Evans admitted that the purchase price was to be financed by GMAC. Mrs. Evans also admitted that the balance of the purchase price was to be financed through GMAC. The purchase agreement for the new vehicle was signed on May 19, 1987, and the credit application was transmitted by telecopier to GMAC at 8:29 a.m. on the following day, May 20, 1987. Scott Dugas, credit supervisor for GMAC, testified that the credit application submitted to GMAC for the Evans was not approved for the amount sought to be financed ($15,447.45). Since the suspensive condition did not occur, the sale is null and void and unenforceable. Bonfanti Marine, Inc. v. Clement, 439 So.2d 537 (La.App. 1st Cir.1983). The trial court erred as a matter of law in concluding that the financing of the sale by GMAC was not a suspensive condition, and in finding there was a valid sale.
This assignment of error has merit.[2]

CONSUMER CREDIT VIOLATION

(Evans' Assignments of Error 3 and 4)
The Evans contend the trial court committed error when it failed to award damages to them for failure of Graves to provide copies of documents involved in the sale of the vehicles, and for Graves's violation of federal and state laws, relating to truth in lending and fair credit practices. 15 U.S.C.A. § 1601 et seq.; La.R.S. 51:1401 et seq.
The Truth in Lending Act and Regulation Z[3] define a "creditor" as one who in the ordinary course of business regularly extends or arranges for the extension of consumer credit, or offers to extend or arrange for the extension of such credit. To "arrange for the extension of credit" means to provide or offer to provide consumer credit which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit receives or will receive a fee, compensation; or other consideration for such service or has knowledge of the credit terms and participates in the preparation of the contract documents required in connection with the extension of credit. Meyers v. Clearview Dodge Sales, Inc., 539 F.2d 511 (5th Cir. 1976), cert. denied, 431 U.S. 929, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977).
When a retailer arranges credit for his purchaser through a third party, the transaction of sale becomes a credit transaction. It is clear from the record as a whole, that the parties in the instant case contemplated that GMAC would finance the credit transaction. The suspensive condition which required approval of the financing arrangement indicates that further action was necessary to consummate the extension of credit. Baxter v. Sparks Oldsmobile, Inc., 579 F.2d 863 (4th Cir. 1978). Agreements which are contingent upon a seller's ability to arrange financing are not contracts for the extension of credit until the contingency is satisfied. Madewell v. Marietta Dodge, Inc., 506 F.Supp. 286 (N.D.Ga.1980).
Although Graves is a "creditor" and was obligated to make the proper disclosures[4] prior to the extension of credit, the Truth in Lending Act does not provide for a penalty until credit is in fact extended. Baxter v. Sparks Oldsmobile, Inc., 579 F.2d at 864. The trial court was correct in finding that Graves had not violated any state or federal consumer credit laws.
These assignments of error are without *1030 merit.[5]

DECREE
For the foregoing reasons, the judgment of the trial court is reversed and judgment is rendered in favor of Graves and against the Evans dismissing the Evans' petition with prejudice. The Evans are cast for all costs.
REVERSED AND RENDERED.
GONZALES, J., concurs and assigns additional reasons.
GONZALES, Judge, concurring and assigns additional reasons.
Article 607 of the Louisiana Code of Evidence provides that the credibility of a witness may be attacked by any party, including the party calling him. This means that the credibility of all witnesses may be attacked. To the extent that counsel for Evans attempted to attack the credibility of Cecil Graves, the court was in error as this is clearly provided for by Louisiana law.
The term "cross-examination" does not have the same meaning under the new Code of Evidence (effective January 1, 1989) that it had under prior law. Under the Code, cross-examination "simply means the questioning of a witness after the witness has been called and questioned by another party." Official comment (c) to Article 611. Whether a party may use leading questions does not depend on whether the witness is examined on direct or cross-examination. The Code substitutes a functional approach to the use of leading questions in place of the mechanical approach of former law. See Article 611(C). Leading questions are allowed whenever a party is examining an adverse party, or a witness identified with an adverse party without regard to whether the examination takes place on direct or cross-examination. To the extent that the method of using leading questions may be employed, Article 611(C) controls this and provides for certain categories of witnesses who may be questioned by the method of leading questions. Clearly, Cecil Graves falls in the category of a "witness identified with an adverse party" and therefore it is permissible under the Code of Evidence to allow leading questions of this type of witness.
An examination of the testimony of Cecil Graves shows that despite the fact that the attorney for Evans was not allowed to utilize leading questions, he nevertheless accomplished his purposes and brought out all the information necessary to his case even though he was not allowed to lead the witness; therefore, under Article 103, the court finds that a "substantial right of the party" is not affected by this erroneous ruling of the court.
NOTES
[1] When this incident occurred, the dealership was under the name of Graves Pontiac-GMC, Inc. Presently, the dealership operates under the name of Graves Pontiac-Buick-GMC Truck, Inc.
[2] Because we find merit in appellant's assignment of error number 1, it is unnecessary for us to address Graves' assignments of error 2, 3 or 4 or the Evans' assignments of errors 1, 2, 5, 6, 7, 8, and 9.
[3] The Truth in Lending Regulation known as Regulation Z, is issued by the Board of Governors of the Federal Reserve System to implement the Federal Truth in Lending Act [15 U.S. C.A. § 1601 et seq.] which is contained in Title I of the Consumer Credit Protection Act, as amended (15 U.S.C. 1601 et seq.) [15 U.S.C.A. § 1601 et seq.].... 12 C.F.R. § 226.1(a).
[4] Section 226.18 of Title 12 of the Code of Federal Regulation sets out the information required to make a proper disclosure.
[5] Because we do not find merit in appellees' assignments of error numbers 3 and 4, it is unnecessary for us to address assignment of error number 10.