597 So.2d 1179 (1992)
NEUBERGER, COERVER & GOINS and John J. Coerver
v.
The TIMES PICAYUNE PUBLISHING CO., the Enterprise Group, Inc., Slidell Memorial Hospital, Leonora Shields, Drew Broach, and Diane Loupe.
No. CA 91 0404.
Court of Appeal of Louisiana, First Circuit.
April 10, 1992.
*1180 Bobby L. Forrest, Baton Rouge, for plaintiff-appellant.
Rutledge C. Clement, Jr., New Orleans, for defendant-appellee.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This action is a suit for damages in tort alleging defamation. The plaintiffs are Neuberger, Coerver & Goins (NCG), a commercial partnership of accountants, and John J. Coerver, individually, a member of the partnership. The defendants in this appeal[1] are The Times-Picayune Publishing Co. (TP), and Diane Loupe, a TP staff writer. TP and Loupe filed a motion for summary judgment which was granted by the trial court. Coerver and NCG took this devolutive appeal.

FACTS
In 1971, the St. Tammany Parish Hospital Service District (District) operated the Slidell Memorial Hospital (Hospital) and employed NCG to act as accountants for the Hospital. This contract was approved by the legislative auditor of the State of Louisiana. In 1982, a controversy arose concerning alleged financial irregularities at the Hospital. The alleged irregularities pertained to delinquent payment of Social Security contributions, failure to pay federal income tax withholdings and lack of internal financial controls (such as operating fund overdrafts). On May 16, 1983, the District terminated its contract with NCG.
The controversy surrounding the Hospital's financial condition was extensively reported in various news articles. On May 18, 1983, TP published an article written by Loupe that stated "The overdraft problem is not mentioned in the Neuberger, Coerver and Goins audit of the hospital's finances for the fiscal years ending Sept. 30, 1978 and 1979. The audit, which was not completed until April 1982, does note other financial irregularities, however, and reprimands the hospital for not promptly reconciling its records with those of the bank." Prior to publication of the article, Loupe contacted Coerver to obtain his comments regarding the criticisms raised.
A few days after publication of the article, Coerver contacted Loupe and asked if she had seen the NCG audit. Loupe explained she had looked through the audit but could not find where the overdraft problem was mentioned. Coerver then pointed out to Loupe the specific page and line where the overdraft problem appeared in the audit. Loupe explained she looked through the audit but did not see the section on "Cash in Bank-Overdrafts". Loupe assured Coerver TP would publish a correction. TP published an article on May 25, 1983, entitled "Story was incorrect: overdrafts were listed". The article stated, in part, "The Neuberger, Coerver and Goins' audit does list operating fund overdrafts of $231,663 for 1978 and $770,421 in 1979. The overdrafts are not cited in the firm's accompanying management letter which comments on the hospital's accounting deficiencies."

SUMMARY JUDGMENT
The law on summary judgments applicable to this case is set forth in Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381, 383-385 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991) as follows:
*1181 LSA-C.C.P. art. 966 provides, in pertinent part:
A. The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed....
B. ... The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
LSA-C.C.P. art. 967 provides, in pertinent part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein....
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
. . . . .
It is well settled that a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits show there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.... The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted.... Under LSA-C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials in his pleadings when a motion for summary judgment is made and supported by affidavits....
On motion for summary judgment, it must first be determined that the supporting documents presented by the moving party are sufficient to resolve all material issues of fact; if they are not sufficient, summary judgment should be denied. It is only if they are sufficient that the burden shifts to the opposing party to present evidence that a material fact is still at issue; only at this point may the adverse party no longer rest on the allegations contained in his or her pleadings....
In certain instances, the failure of an adverse party to file counter-affidavits does not automatically entitle the moving party to summary judgment.... However, if the moving party has established both that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, it is incumbent upon the adverse party to set forth specific facts showing that there is a genuine issue for trial.... (Citations omitted)

LIABILITY OF TP AND LOUPE FOR DEFAMATION
In their only assignment of error, Coerver and NCG contend the trial court erred in finding them to be public figures and granting the motion for summary judgment. Coerver and NCG argue they are not "public figures" and under the applicable principles of law need only show fault to recover for defamatory statements.
In Usner v. Strobach, 591 So.2d 713, 725-726 (La.App. 1st Cir.1991), writ denied, 592 So.2d 1289 (La.1992), we set forth the general law on the tort of defamation as follows:
Freedom of speech or expression is guaranteed in the First Amendment of the United States Constitution and La. *1182 Const. of 1974, art. I, § 7. The Louisiana constitutional provision states that "[E]very person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom." What constitutes an abuse of the right of freedom of speech is, in part, controlled by La.C.C. art. 2315 and the law of tort on defamation (libel and slander). See the excellent discussion of defamation in F. Maraist, Vol. II, Louisiana Practice Series, Louisiana Torts Law: Cases and Materials, pp. 609-628 (1991).
The elements of the tort of defamation are (1) defamatory words; (2) publication; (3) falsity; (4) malice; and (5) resulting injury. Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196 (La.1980). In Redmond v. McCool, 582 So.2d 262, 264-265 (La.App. 1st Cir.1991), appears the following:
Privilege is a defense to a defamation action.... A qualified privilege exists when defamatory statements are made: "(1) in good faith, (2) on a matter in which the person making the communication has an interest or with regard to which he has a duty, or (3) to a person with a corresponding interest or duty." ... Good faith exists for the purpose of this privilege when the communicating party has reasonable grounds to believe the statement to be true.
. . . . .
Only when a statement is found to be made without reasonable grounds for believing it to be true can the person uttering the statement be found to be actuated by malice or ill will.... (Citations omitted)[2]
*1183 In F. Maraist, supra, at p. 609, appears the following:
The Louisiana law governing defamation was similar to the common law. Elements of the cause of action for defamation (libel or slander) were (1) publication of (2) defamatory words (3) which were false, with (4) malice, actual or implied, and (5) injury, which generally was presumed. Truth was an affirmative defense. The Common Law (and Louisiana law) thus produced a form of strict or absolute liability, with punitive (presumed mental anguish) damages. The United States Supreme Court concluded that imposition of this kind of liability, at least in matters of public concern, stifled First Amendment speech. Beginning with the landmark case of New York Times Co. v. Sullivan, cited in the Mashburn case which follows, the Court `rewrote' the tort law of defamation by imposing First Amendment restrictions on a state's right to punish for defamatory communications. Some of the Supreme Court cases are discussed in Mashburn. Generally, the cases require a determination of the `status' of the plaintiff and the defendant and the `nature' of the alleged defamatory matter. If the plaintiff is a public official or public figure, the defendant is `media,' and the matter is of `public concern,' the plaintiff must establish by `clear and convincing evidence' that the defendant acted with knowledge of the falsity or in reckless disregard of the truth or falsity. Presumably, the same rule would apply to a private citizen bringing a defamation action against a media defendant on a matter of `public concern' (although it is unlikely that a media defendant would `publish' a matter of `private concern' about a private citizen).
(Emphasis added; footnote omitted)
In the instant case it is uncontested that TP and Loupe are media and that the financial condition of the Hospital is a matter of public concern. Whether Coerver and NCG are public[3] or private persons is not relevant to the issue of whether they must prove the element of malice because in either event, they must do so; if this distinction is relevant, it only pertains to the burden of proof imposed on Coerver and NCG, that is, whether they must prove malice by clear and convincing or preponderating evidence.[4]
Loupe's affidavit filed with the motion for summary judgment stated, in pertinent part, the following:
(8) After reviewing these documents, I sincerely believed the Hospital's overdraft problem was not mentioned in the audits.
(9) When I wrote the following statement, which was published in the May 18, 1983 article, I did not entertain any doubts as to its truth: `The overdraft problem is not mentioned in the Neuberger, Coerver & Goins audit of the hospital's finances for the fiscal years ending Sept. 30, 1978 and 1979.'
. . . . .
(13) At the time the Articles were published, I had no knowledge that any information in the Articles was false or inaccurate. I did not entertain serious doubts as to the truth of the statements made in the Articles.
(14) At the time the Articles were published, I bore no malice or ill will toward Mr. Coerver or the Neuberger, Coerver & Goins firm.
Coerver and NCG did not present counter affidavits, depositions or documents.
*1184 As a general rule, a motion for summary judgment "... is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith." (Emphasis added). Penalber v. Blount, 550 So.2d 577, 583 (La.1989). However, even though granting a summary judgment based on an intent, malice or good faith issue may be rare, it can be done when there is no issue of material fact concerning the pertinent intent, malice or good faith. Simoneaux v. E.I. Du Pont De Nemours and Company, Inc., 483 So.2d 908 (La.1986); Carter v. BRMAP, 591 So.2d 1184 (La.App. 1st Cir.1991) and the cases cited therein. The documentary evidence presented by TP and Loupe is clear and unambiguous in showing that Loupe acted in good faith and without malice toward Coerver and NCG. Coerver and NCG presented no counter affidavits or other documentary evidence to show otherwise. In this factual and legal posture, the trial court correctly granted the summary judgment.
This assignment of error is without merit.

DECREE
For the foregoing reasons the judgment of the trial court is affirmed. Coerver and NCG are cast for the cost of this appeal.
AFFIRMED.
SHORTESS, J., concurs in result.
NOTES
[1] There were other parties defendant in this case. Their names and relationship to the case are not pertinent to this appeal.
[2] Defamation is also proscribed in the Criminal Code as follows:

La.R.S. 14:47. Defamation
Defamation is the malicious publication or expression in any manner, to anyone other than the party defamed, of anything which tends:
(1) To expose any person to hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse; or
(2) To expose the memory of one deceased to hatred, contempt, or ridicule; or
(3) To injure any person, corporation, or association of persons in his or their business or occupation.
Whoever commits the crime of defamation shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both.
La.R.S. 14:48. Presumption of malice
Where a non-privileged defamatory publication or expression is false it is presumed to be malicious unless a justifiable motive for making it is shown.
Where such a publication or expression is true, actual malice must be proved in order to convict the offender.
La.R.S. 14:49. Qualified privilege
A qualified privilege exists and actual malice must be proved, regardless of whether the publication is true or false, in the following situations:
(1) Where the publication or expression is a fair and true report of any judicial, legislative, or other public or official proceeding, or of any statement, speech, argument, or debate in the course of the same.
(2) Where the publication or expression is a comment made in the reasonable belief of its truth, upon:
(a) The conduct of a person in respect to public affairs; or
(b) A thing which the proprietor thereof offers or explains to the public.
(3) Where the publication or expression is made to a person interested in the communication, by one who is also interested or who stands in such a relation to the former as to afford a reasonable ground for supposing his motive innocent.
(4) Where the publication or expression is made by an attorney or party in a judicial proceeding.
La.R.S. 14:50. Absolute privilege
There shall be no prosecution for defamation in the following situations:
(1) When a statement is made by a legislator or judge in the course of his official duties.
(2) When a statement is made by a witness in a judicial proceeding, or in any other legal proceeding where testimony may be required by law, and such statement is reasonably believed by the witness to be relevant to the matter in controversy.
(3) Against the owner, licensee or operator of a visual or sound broadcasting station or network of stations or the agents or employees thereof, when a statement is made or uttered over such station or network of stations by one other than such owner, licensee, operator, agents or employees.
The substantive criminal law on defamation may be considered in determining the substantive civil law on defamation. See, for example, Gugliuzza v. KCMC, Inc., 593 So.2d 845 (La.App. 2nd Cir.1992).
[3] Whether plaintiff is considered a public figure is a question of law and, thus, may be disposed of with a motion for summary judgment. Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); Guzzardo v. Adams, 411 So.2d 1148 (La.App. 1st Cir.), writ denied, 415 So.2d 942 (La.1982).
[4] A preponderance of the evidence means evidence of greater weight, or evidence which is more convincing, than that offered in opposition to it. Clear and convincing evidence is evidence that requires more proof than a preponderance of the evidence but less than the criminal standard of beyond a reasonable doubt. Succession of Lyons, 452 So.2d 1161 (La.1984); See, Succession of Sauls, 510 So.2d 715 (La.App. 1st Cir.1987); Succession of Riggio, 468 So.2d 1279 (La.App. 1st Cir.), writ denied, 472 So.2d 33 (La.1985).