CARTER, Judge.
This appeal arises out of a trial court judgment granting a motion for summary judgment.

BACKGROUND

On or about August 28,1991, Lynn Hubert Lovell, Jr. (“Lovell”), his mother, Cynthia Dyas, and Ray Gross Motors, Inc. engaged in discussions concerning Lovell’s possible purchase of a used Pontiac LeMans from Ray Gross Motors. After paying the required down payment of one thousand dollars ($1,000.00) for the LeMans, Lovell was allowed to use and drive the automobile during the evening of August 28, 1991.[1]
On the following afternoon, August 29, 1991, Lovell was informed by a representative of Ray Gross Motors that General Motors Acceptance Corporation (GMAC) would not provide financing for the LeMans, but that GMAC would finance a 1991 Dodge Colt. After test driving a 1991 Colt, Mrs. Dyas and Lovell entered into an agreement with Ray Gross Motors for its purchase.
Mrs. Dyas and Lovell then met with Ethel Sutfin, finance manager at Ray Gross Motors, who informed them that the down payment for the Colt was $500.00 more than the down payment which had been applied toward the LeMans. Mrs. Dyas and Lovell then presented Ms. Sutfin with two checks, each made payable for one hundred dollars ($100.00), and agreed to return on August 30, 1991, with three additional checks, each made payable for one hundred dollars ($100.00). It was agreed that Ray Gross Motors would deposit one check per week for the next five weeks. Mrs. Dyas and Lovell then signed various documents, which included the following: a retail installment contract, a buyer’s order, a description of vehicle/disclaimer of warranties statement, an odometer statement, a bill of sale, a notice to cosigner, an *282 application for title and registration, a customer statement, and an agreement with GMAC to keep the vehicle fully insured during the period of financing.
After Mrs. Dyas and Lovell had signed the documents, it was after 6:30 p.m., and Mrs. Dyas’ insurance agency had already closed for the day. Ms. Sutfin allegedly assured Mrs. Dyas and Lovell that the newly acquired automobile would be insured for the evening under Ray Gross Motors’ insurance policy. Lovell then drove the automobile home.

FACTS

In the early morning hours of August 30, 1991, at approximately 1:40 a.m., Lee Adam Billiot, Jr. was a guest passenger in Lovell’s 1991 Colt. The automobile suddenly left the travelled portion of the roadway, struck a ditch embankment, and overturned. As a result of the collision, Lee Adam Billiot, Jr. was. ejected from the vehicle and suffered fatal injuries.
On October 30, 1991, plaintiffs, Lee Adam Billiot,'Sr. and Debra Businelle Billiot, parents of Lee Adam Billiot, Jr., filed this wrongful death and survival action under the provisions of LSA-C.C. articles 2315.1 and 2315.2, alleging that the sole cause of the accident was the negligence of Lovell. Named as defendants in the action were Lovell; Prudential Property and Casualty Insurance Company,[2] Lovell’s automobile liability insurer;[3] Ray Gross Motors, Inc.; Chrysler Insurance Company,[4] Ray Gross Motors’’ liability insurer; and the State of Louisiana, through the Department of Transportation.[5]
On May 27, 1992, Ray Gross Motors filed an exception pleading the objection of no right of action, contending that plaintiffs had no right to assert a claim against them for failure to supply liability insurance coverage to Lovell. On August 12, 1992, the trial court signed a judgment maintaining the exception and dismissing all demands against Ray Gross Motors.
On May 27, 1992, Chrysler Insurance Company filed a motion for summary judgment, contending that, because the sale of the 1991 Colt occurred on August 29, 1991, the automobile was no longer owned by Ray Gross Motors at the time of the accident. Chrysler reasoned that, as a result, there was no coverage under the liability policy covering the dealership-. Alternatively, Chrysler alleged that, even if the dealership owned the automobile at the time of the accident, language in its policy excluded coverage for Lovell because he had other insurance coverage available to him at the time of the accident.
On October 15, 1992, the trial court granted Chrysler’s motion for summary judgment. Plaintiffs appealed,[6] assigning the following specifications of error:
1. The trial court erred in granting defendant-appellee’s motion for summary judgment when there exists a genuine issue as to material fact whether or not a sale of the automobile involved in the accident herein had occurred prior to the accident.
2. The trial court erred in granting defendant-appellee’s motion for summary judgment on the alternative grounds that even if a sale of the automobile involved in *283 the accident had not occurred prior to the accident, there was no coverage for the accident under the policy issued by defendant-appellee due to certain exclusionary language contained in that policy.

SUMMARY JUDGMENT

Plaintiffs contend that the trial court erred in granting Chrysler’s motion for summary judgment.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Thompson v. South Central Bell Telephone Company, 411 So.2d 26, 27 (La.1982); Legros v. Norcen Exploration, Inc., 588 So.2d 859, 860 (La.App. 1st Cir.), writs denied, 588 So.2d 101, 109 (La.1991).
A fact is material if it is essential to the plaintiffs cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant’s ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989).
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). In determining whether material facts have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980).
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir.1988).

SALE OF THE AUTOMOBILE

Plaintiffs contend that the trial court erred in finding that the sale of the 1991 Colt was complete on August 29, 1991.
It is clear that if the sale of the automobile was complete on August 29, 1991, then Chrysler’s policy does not provide liability coverage in the instant case. Thus, the issue for our review is whether the trial court erred in finding that the sale of the 1991 Colt from the dealership to Lovell was complete on August 29, 1991. A sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself. Three circumstances concur to the perfection of the contract: the thing sold, the price, and the consent. LSA-C.C. art. 2439; Evans v. Graves Pontiac-Buick-GMC Truck, Inc., 576 So.2d 1025, 1028 (La.App. 1st Cir.), writ denied, 581 So.2d 687 (La.1991); DB Orban Company v. Lakco Pipe & Supply, Inc., 496 So.2d 1382, 1384 (La.App. 3rd Cir.1986). A sale is considered to be perfect between the parties, and the property is of right acquired by the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid. LSA-C.C. art. 2456.
In the instant case, Mrs. Dyas testified in her deposition that, at the time of her son’s accident, he was driving the 1991 Colt, which *284 had just been purchased from Ray Gross Motors. She acknowledged that the sale of the vehicle was complete after she and her son signed all of the documents on August 29, 1991:
Q. As far as you knew then, when you and your son left the dealership on August 29th, the only additional thing that needed to be done was that Ethel Sutfin [finance manager for Ray Gross Motors] needed to be called about the specifics of the insurance.
A. Right.
Q. But there were no other papers to sign, and as far as you knew at that moment in time?
A. No.
Q. And the sale of the vehicle had been all completed.
A. Yes.
Q. Whereas, on the night before, you hadn’t completed the sale, but were waiting for the credit to be approved or disapproved on the Lemans?
A. Yes.
An entry in Mrs. Dyas’ notebook also noted that the vehicle’s “date of purchase” was “8/29/91.”
The deposition testimony of Tommy Chau-vin, sales manager at Ray Gross Motors, reveals that he did not participate in the negotiations which led to the sale of the vehicle involved in this case. He explained that the dealership uses third-party closings, whereby the sales manager “pencils-in” a price for the salesman to negotiate to the buyer. Chauvin indicated that his approval is required before a salesman can negotiate a price. Chauvin stated that he must have approved the price of the red 1991 Colt because he recalled meeting Mrs. Dyas and Lovell on August 29, 1991, shaking their hands, and thanking them for their business.
Robert Tarleton, salesman at Ray Gross Motors, stated in his deposition that on August 29, 1991, Mrs. Dyas and Lovell test drove a blue 1991 Colt, but decided to purchase a red Colt. Tarleton testified that he reached an agreement with them as to the price of the red 1991 Colt. Mrs. Dyas and Lovell then met with Ethel Sutfin, the dealership’s finance manager, to make financing arrangements.[7]
Susan Gross, general manager at Ray Gross Motors, stated in her deposition that she was out of the office on August 29, 1991, when the sale took place, but that she signed the documents, on behalf of Ray Gross Motors, the following morning. Ms. Gross indicated that as soon as a customer signs all of the documents, the car becomes the property of the customer.
However, plaintiffs contend that the dealership’s failure to have a representative sign the purchase documents on August 29, 1991, evidences that the sale was not complete at that time. More specifically, plaintiffs note that the Buyer’s Order, containing the language “THIS ORDER IS NOT VALID UNLESS SIGNED AS ACCEPTED,” was not signed by a representative of Ray Gross Motors on August 29, 1991.
In Van-Trow Olds-Cad-Toyota, Inc. v. Wiggins, 516 So.2d 1261, 1262 (La.App. 2nd Cir.1987), the court considered a similar provision in the dealership’s “deal sheet,” which stated that “THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE.” Even though the deal sheet was not signed by a representative of the dealership, the court ruled that there was a valid sale because the parties had verbally agreed on the object and price, and “[f]rom that point both parties acted as if they had a completed sale. Van-Trow delivered the car to Ms. Wiggins and she issued a check in partial payment of the price.” Van-Trow Olds-Cad-Toyota, Inc. v. Wiggins, 516 So.2d at 1263.
Similarly, in the instant case, the deposition testimony shows that the parties reached an agreement as to the thing and the price on August 29, 1991. From that point forward, both parties to the sale acted as if the sale was complete. Mrs. Dyas and Lo-vell met with the dealership’s finance manag *285 er and executed all of the required documents. A cash down payment was then accepted, and a temporary license was issued. Lovell then drove the vehicle away from the dealership.
Plaintiffs also argue that because Mrs. Dyas was called in to the dealership several days after the accident to sign an additional document regarding the purchase of the vehicle, the sale was not complete on August 29, 1991. However, Tommy Chauvin explained that GMAC merely returned a document for Mrs. Dyas to sign her name above that of her husband.
After reviewing the testimony and the documents in the record, we conclude that the sale of the 1991 Colt was complete on August 29, 1991. On that date, the parties reached an agreement as to the object sold (the red 1991 Dodge Colt) and the price $9,964.18 (including taxes). See LSA-C.C. art. 2439; Evans v. Graves Pontiac-Buick-GMC Truck, Inc., 576 So.2d at 1028.
Therefore, it is clear that, at the time of the accident, the automobile was no longer owned by the dealership and that there was no coverage under Chrysler’s insurance policy. Accordingly, no genuine issues of material fact were in dispute, and the trial court did not err in granting Chrysler’s motion for summary judgment.
Given our resolution of assignment of error number one, we find it unnecessary to address plaintiffs’ second assignment of error.

CONCLUSION

For the reasons set forth above, the judgment of the trial court, granting Chrysler’s motion for summary judgment, is affirmed. Plaintiffs are cast for the costs of the appeal.
AFFIRMED.

. Financing for the LeMans had not yet been approved.

. Prudential paid plaintiffs its policy limits of $100,000.00. Plaintiffs then released Prudential and its insured from any and all claims arising out of the accident, but specifically reserved all rights against Ray Gross Motors and Chrysler Insurance Company.

. Lovell was named as an additional driver on the Prudential policy, which was issued in the name of his mother, Cynthia Dyas, and his stepfather, Gary Dyas.

. By supplemental petition dated January 2, 1992, plaintiffs added Chrysler Insurance Company as a defendant.

. By supplemental petition dated September 8, 1992, plaintiffs added the State of Louisiana as a defendant.

. In their petition for appeal, plaintiffs appealed from the August 12, 1992, judgment maintaining the exception pleading the objection of no right of action and from the October 15, 1992, judgment granting Chiysler’s motion for summary judgment. However, the notice of appeal indicates that the appeal was granted from the judgment of October 15, 1992. Therefore, the only matter before us is the trial court's granting of Chrysler's motion for summary judgment.

. Financing for the 1991 Colt had been approved by GMAC prior to Mrs. Dyas and her son test driving the Colt; therefore, financing was not a condition of the sale.