632 So.2d 321 (1993)
Ramon V. JARRELL
v.
William H. CARTER, Sr., Southern Beverage Co., Inc. Anheuser-Busch, Inc. and Anheuser-Busch Investment Capital Corporation.
No. 93 CA 0600.
Court of Appeal of Louisiana, First Circuit.
December 29, 1993.
Rehearing Denied February 23, 1994.
*322 David Robinson, and James Holliday, Baton Rouge, for plaintiff-appellant Ramon V. Jarrell.
J. Peyton Parker, Jr., Baton Rouge, for intervenor-appellee Robert J. McDonald.
Covert J. Geary, Raymond Salassi, Jr., New Orleans, for defendant-appellee William H. Carter, Sr.
Tom F. Phillips, Baton Rouge, for defendant-appellee Anheuser Busch, Inc.
Before LOTTINGER, C.J., and WHIPPLE and FOGG, JJ.
LOTTINGER, Chief Judge.
This appeal arises from the trial court's granting of a motion for summary judgment wherein the plaintiff's suit against one defendant was dismissed. The plaintiff sought to recover from the defendant the costs stemming from the effort and time he spent investigating and preparing to buy a beer distributorship from the defendant. The plaintiff alleges that the defendant contracted with him to sell the beer distributorship. The plaintiff appeals.

FACTS
Ramon V. Jarrell, plaintiff-appellant, filed suit against William H. Carter, defendant-appellee, Southern Beverage Co, Inc. (Southern Beverage), Anheuser-Busch, Inc. (Anheuser-Busch), and Anheuser-Busch Investment Capital Corporation when Jarrell's attempt to purchase Southern Beverage from Carter failed. Carter instead sold Southern Beverage to Anheuser-Busch. Southern Beverage is the Baton Rouge distributor of Anheuser-Busch products. Anheuser-Busch is the beer manufacturer that is internationally recognized as the maker of Budweiser beer.
Jarrell alleges that in April or May of 1983, he first met with Carter to discuss the sale of Southern Beverage. Jarrell submits that Carter offered to sell Southern Beverage to him provided that he pay Carter $16.5 million in cash and that he obtain Anheuser-Busch's approval of the sale. Jarrell claims that he agreed to buy the distributorship subject to these two conditions. However, although Jarrell admits that he and Carter never entered into a written agreement concerning the sale of Southern Beverage, Jarrell stated at his deposition that shortly after he met with Carter he developed a document outlining the terms or conditions of their oral agreement.
Subsequent to their meeting, Carter furnished Jarrell with Southern Beverage's financial statements and tax returns to assist Jarrell in evaluating the distributorship's profit potential. Jarrell claims that from May of 1983, to January of 1984, he put together a proposal to submit to his banks to obtain the funds to purchase Southern Beverage. Accordingly, Jarrell stated that he arranged financial commitments. Furthermore, Jarrell met with representatives from Anheuser-Busch in St. Louis in January of 1984, to discuss the acquisition of Southern Beverage. Moreover, Jarrell stated at his deposition that he showed the Anheuser-Busch representatives a "letter of commitment." Additionally, Jarrell claims that the Anheuser-Busch representatives attempted to discourage him from purchasing Southern Beverage by contending that the distributorship was not worth $16.5 million. Most importantly, Jarrell never obtained Anheuser-Busch's approval of the proposed sale.
Carter claims that no commitment to sell Southern Beverage surfaced as a result of the April or May 1983 meeting with Jarrell. Carter asserts that he never intended to sell the distributorship to Jarrell. Instead, he claims that he utilized Jarrell's efforts to see what his business was worth. Hence, Carter denies the existence of a contract with Jarrell to sell Southern Beverage. Furthermore, in support of his claim, Carter points to the fact that he refused to sign two written agreements that Jarrell submitted to him. Moreover, Carter asserts that Jarrell admitted at his deposition and at a related trial in federal court that no contract existed.
Jarrell never presented any agreement to Carter which provided that the $16.5 million would be paid "in cash." Although it appears that Jarrell was willing to pay $16.5 million for the distributorship, he was not going to pay Carter the $16.5 million in cash up front.
*323 Whether Jarrell was unable to get financing or whether he had some business-oriented motive not to pay the entire sum in cash is a another question. The fact remains that Carter wanted $16.5 million in cash.

TRIAL COURT
The trial court granted Carter's motion for summary judgment against Jarrell. In its reasons for judgment, the trial court believed that summary judgment was appropriate in this case because even if the disputed facts were resolved in Jarrell's favor, Jarrell would still not have a cause of action. The trial court analogized the parties' position to that of a would-be buyer and a would-be seller of a house. The trial court reasoned that if someone puts their house on the market without intending to sell it, being that they just want to see how much another is willing to pay for it, the fact that a prospective buyer puts forth the time and effort to try to buy the house does not give rise to a cause of action against the homeowner. Accordingly, the trial court determined, beyond any dispute of material fact, that there was no contract between Jarrell and Carter. Hence, the trial court concluded that because Carter never intended to sell Southern Beverage to Jarrell, Carter was fully justified in selling the distributorship to Anheuser-Busch. Additionally, the trial court concluded that because the business discussions between Jarrell and Carter never culminated into an agreement, Jarrell is not entitled to recover under the additional, noncontractual theories of recovery. Thus, the trial court believed nothing Jarrell alleged against Carter was actionable. Jarrell appeals.

ASSIGNMENT OF ERROR
Jarrell submits that the trial court erred in determining that summary judgment was appropriate because the evidence presented was not legally sufficient to resolve all disputed issues concerning his causes of action against Carter and that Carter was not entitled to be dismissed as a matter of law.

ISSUE
Jarrell's assignment of error raises the following single question for review: Did the trial court err in determining that summary judgment was appropriate for this case because Jarrell's claims against Carter presented no genuine issue as to material fact, and that Carter was entitled to judgment as a matter of law?

DISCUSSION
La.Code Civ.P. art. 966 provides:
A. The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
B. The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.

(Emphasis added).
Recently, in Smith v. Exxon Chemical Americas, 619 So.2d 140, 142 (La.App. 1st Cir.1993), we stated that a motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. However, a summary judgment is not to be used as a substitute for a trial on the merits. Oller v. Sharp Electric, Inc., 451 So.2d 1235, 1237 (La.App. 4th Cir.), writ denied, 457 So.2d 1194 (La. 1984).
"A fact is material if it is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail." Smith, 619 So.2d at 142. Stated differently, "material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute." Id.
*324 Moreover, the burden is cast upon the mover for summary judgment to show that no genuine issue of material fact exists. Id. Accordingly, the trial court should not seek to determine whether it is likely that the mover will prevail on the merits, but instead whether there is an issue of material fact. Insley v. Titan Insurance Company, 589 So.2d 10, 13 (La.App. 1st Cir.1991). Furthermore, only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law is summary judgment appropriate. Smith, 619 So.2d at 142. Additionally, in deciding whether material issues have been disposed of, any doubt must be resolved against the granting of the summary judgment and in favor of a trial on the merits. Id.
Regarding the standard of review pertaining to summary judgments, the Louisiana Supreme Court has held that "[a]ppellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). In addition, because the mover has the burden of establishing that no material factual issues exist, the defending party must have his properly filed allegations accepted as true and must receive the benefit of the doubt when his assertions conflict with those of the movant. Id.
The Louisiana Civil Code[1] mandates that "[a] conditional obligation is one dependent on an uncertain event." La.Civ.Code art. 1767. "If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive." La.Civ.Code art. 1767. Moreover, "[i]f the condition is that an event shall occur within a fixed time and that time elapses without the occurrence of the event, the condition is considered to have failed." La.Civ.Code art. 1773. However, "[i]f no time has been fixed for the occurrence of the event, the condition may be fulfilled within a reasonable time."[2] La.Civ. Code art. 1773. Additionally, "[w]hether or not a time has been fixed, the condition is considered to have failed once it is certain that the event will not occur."[3] La.Civ.Code art. 1773.
*325 In Evans v. Graves Pontiac-Buick-GMC Truck, Inc., 576 So.2d 1025, 1028-29 (La.App. 1st Cir.), writ denied, 581 So.2d 687 (La. 1991), we decided that the approval of financing was an uncertain event which suspended enforcement of a sale of a truck. We concluded that because the suspensive condition did not occur, the sale was null, and void and unenforceable. Id. at 1029. In other words, we held that because the approval of financing was a suspensive condition that did not occur, there was no valid contract of sale. Id.
Furthermore, in Neuberger, Coerver & Goins v. Times Picayune Publishing Co., 597 So.2d 1179, 1184 (La.App. 1st Cir.1992), we held that as a general rule, a motion for summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith. Hence, summary judgments may not rest on the weighing of testimony or upon credibility evaluations. Bercegeay v. Cal-Dive International, Inc., 583 So.2d 1181, 1183 (La.App. 1st Cir.), writ denied, 589 So.2d 1070 (La.1991). Thus, because subjective facts like intent and motive call for credibility evaluations and the weighing of testimony, summary judgment is not warranted for such determinations.
In the case at hand, the trial court decided that summary judgment was appropriate because it believed that no contract existed between Jarrell and Carter. Furthermore, the trial court believed that Carter did not intend to sell Southern Beverage to Jarrell. Accordingly, the trial court summarily concluded that beyond any dispute of material fact, no contract existed between Jarrell and Carter because the business discussions never ripened into an agreement to sell. Moreover, to exemplify its conclusion, the trial court analogized Jarrell and Carter's positions in this matter respectively to that of a would-be buyer and that of a would-be seller of a house. Hence, the trial court reasoned, that if someone puts his house on the market without intending to sell it, the fact that another takes the time and effort to try to buy the house does not give rise to a cause of action against the homeowner.
Additionally, the trial court justified its decision on the fact that Jarrell made two written proposals to Carter that Carter refused to sign. Also, the trial court pointed out that at a related trial in federal court, Jarrell admitted that Carter did not agree to the written proposals. Thus, the trial court stated that Jarrell did not allege facts that would support a finding that Carter owed him any obligation.
We hold that after thoroughly reviewing the record and Jarrell's deposition, that although it was inappropriate for the trial court to grant the motion for summary judgment based on its evaluation of Carter's intent, summary judgment is warranted because there are no genuine issues of material fact. Assuming for purposes of argument that an oral contract to sell did exist between Jarrell and Carter, Jarrell admitted that the alleged contract to sell the distributorship was subject to two conditions. First, Jarrell testified that Carter wanted $16.5 million "in cash." Second, Jarrell testified that Anheuser-Busch must approve the sale. We find that neither event occurred within a reasonable period of time.
However, despite Jarrell's contention at his deposition that he did in fact offer Carter $16.5 million "in cash," Anheuser-Busch did not approve the sale. Hence, there exists no genuine issue of material fact because Jarrell admitted several times that Anheuser-Busch did not approve the alleged sale agreement. Because Anheuser-Busch's approval was crucial to Jarrell's claim against Carter, there is no genuine issue of material fact present that would form a basis to shield Jarrell from summary judgment. Thus, because at least one of the suspensive conditions failed, any contract which may have existed subject to these two suspensive conditions is invalid as a matter of law.

*326 DECREE
Therefore, for the above stated reasons the judgment of the trial court dismissing Jarrell's claim against Carter is affirmed. Jarrell is assessed with all costs.
AFFIRMED.
WHIPPLE, J., concurs.
NOTES
[1] As stated above, Jarrell alleges that Carter agreed to sell Southern beverage to him at their initial meeting in April or May of 1983, a time prior to the effective date of the amendments which now govern the parties' situation. Nevertheless, for the purpose of practicality, we employ the current articles of the Louisiana Civil Code to decide this matter to the extent that the current articles do not change the law that existed at the time of the alleged contract to sell. However, as enumerated below, there is one notable exception.
[2] The 1984 Revision Comments of La.Civ.Code art. 1773 provide, in full, as follows:

(a) This Article reproduces the substance of C.C. Art.2038 (1870). It changes the law insofar as it provides that, if no time has been fixed for the event to occur, it must occur within a reasonable time.
(b) This Article preserves the basic principle of the source Article. The only change is the limitation of the time allowed for fulfillment of a condition when no time has been fixed. Following the classical approach, C.C. Art.2038 (1870) provides that in such case "the condition may always be performed." This suggests that parties could be bound under condition for life, or even for generations on end, which is not practical. Strikingly enough, most French writers, including Planiol, have entirely ignored this matter. Pothier, however, faced it, though very briefly, arriving at the conclusion that when the condition is simply potestative on the part of the obligor, the obligee has the power to address the court and request that a time be fixed. 1 Pothier, A Treatise on the Law of Obligations or Contracts 120 (Evans trans. 1806). In modern times, Baudry-Lacantinerie has reached the same conclusion. 13 Baudry-Lacantinerie et Barde, Traite theorique et pratique de droit civil 29-32 (3rd ed. 1907). That conclusion is reasonable and has therefore been adopted.
(Emphasis added).
Accordingly, because the redactors of the Louisiana Civil Code recognized the practicality of limiting the time in which a condition may be fulfilled when no time has been fixed, we decide that an adherence to the current article for the disposition of this case warrants a just and proper solution. Otherwise, as so cautioned by the redactors, the parties could be bound ad infinitum.
[3] Additionally, we believe that this clause to La. Civ.Code art. 1773, which does not change the substance of the source article, provides an appropriate basis for our conclusion pertaining to this case. Hence, because Jarrell testified at his deposition that he left the meeting with the Anheuser-Busch representatives with the inevitable conclusion that Anheuser-Busch would not approve the proposed sale of Southern Beverage to him, we believe that Jarrell's admission gives an additional reason to employ La.Civ.Code art. 1773. Furthermore, Jarrell's admission which conveys that he did not bother submitting an application requesting Anheuser-Busch's approval of the sale of Southern Beverage makes it "certain" that the condition mandating Anheuser-Busch's approval would not occur.