745 So.2d 666 (1999)
John A. CLARK, Claude Fowler, Sr., Susan M. Fowler and Ward Fowler
v.
Frank FAVALORA d/b/a Four Wheeler Shop, et al.
No. 98 CA 1802.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
Rehearing Denied November 17, 1999.
*668 Henry G. Terhoeve[1], Baton Rouge, for Plaintiffs/Appellants, Claude Fowler, Sr., Susan and Ward Fowler.
Anne Derbes Keller, New Orleans, for Defendant/Appellee, Uniroyal Goodrich Tire Co.
Before: CARTER, C.J., LeBLANC, and PETTIGREW, JJ.
CARTER, C.J.
This case arises out of a single-vehicle accident in which the passenger of a modified Toyota pickup truck was killed. The truck, which had been raised and equipped with large 33-inch tires manufactured by defendant/appellee, Uniroyal Goodrich Tire Company (Uniroyal), rolled over several times after the driver lost control of the truck in an attempt to avoid hitting a dog on the road. The plaintiffs,[2] the Fowlers, appeal the trial court's grant of a motion for summary judgment, dismissing Uniroyal from the suit.[3]

BACKGROUND
In 1985, John Clark (Clark) purchased a 1985 Toyota SR-5, four-wheel drive pickup truck. Later that year, Clark, who worked in his father's body shop, made modifications to his truck to achieve the look of an off-road vehicle. He purchased the necessary kits and components to achieve a nine and a half inch lift or suspension of his truck. Clark installed the lift kit himself. After installing the lift kit, Clark purchased a set of used B.F. Goodrich 33-inch tires from a friend and four new wheels from the Four Wheeler Shop. At Clark's request, the Four Wheeler Shop mounted the tires onto the wheels and installed the new wheels and tires on the truck, replacing the 22-inch tires that came with the truck.
In 1989 or 1990, Clark bought a set of new B.F. Goodrich 33-inch tires from Tony's Tire Center (Tony's). Clark further modified his truck by adding a roll bar and traction bars, as well as changing the gear ratio on the truck to compensate for the size of his tires.

FACTS
On the afternoon of March 25, 1990, Clark returned from an overnight fishing trip with Claude Fowler, Jr. (decedent), and several other friends and relatives. Earlier that day, Clark had consumed at least three or four beers. After consuming a few more beers at a bar in Springfield over the span of one hour, Clark left to bring decedent home in Clark's modified truck. As Clark traveled down a two-lane highway, he came upon a curve and spotted a dog in the curve. In an effort to avoid hitting the dog, Clark moved his *669 steering wheel to the right, which caused his right tire to drop off the road onto the shoulder. When Clark tried to correct the steering, his truck went across the road to the left shoulder. As Clark again tried to correct the steering, the vehicle began to spin and then rolled over several times. Decedent, who was not wearing his seat-belt, was ejected from the truck and died. Clark sustained non-fatal injuries in the accident. After the accident, Clark was found to have a blood alcohol level of 18 grams percent.

PROCEDURAL HISTORY
On March 22, 1991, a petition for damages was filed on behalf of Clark, Claude Fowler, Sr. (decedent's father), Susan Fowler (decedent's mother), and Ward Fowler (decedent's brother) against Uniroyal[4] and several other defendants.[5] Almost three years later, Uniroyal filed a motion for summary judgment, which was heard before the trial court in February 1994. Plaintiffs responded to the motion with the affidavit of John Rigol, Jr., an accident reconstruction specialist. Uniroyal filed a supplemental memorandum in support of their motion for summary judgment noting Rigol's statement in his affidavit that John Clark's vehicle had been elevated with a suspension kit and that the increased elevation "made the vehicle unstable and increased the likelihood of a rollover when compared to a non-elevated vehicle." Thus, Uniroyal argued that plaintiffs had failed to assert that the subject tires were dangerous in design or that the tires possessed a characteristic that may cause damage for which Uniroyal had a duty to warn. Furthermore, Uniroyal asserted that it had no duty to warn any of the plaintiffs of any alleged dangerous characteristic of the tires (propensity to rollover) because the deposition testimony of the plaintiffs revealed that they were all aware that adding lift kits and large tires to a small truck could make the vehicle unstable and increase the likelihood of a rollover. This motion for summary judgment was denied by the trial court.
After further discovery, including taking the deposition of A.J. McPhate, another accident reconstruction specialist retained by plaintiffs, Uniroyal filed a motion for summary judgment on or about May 16, 1997, asserting that plaintiffs had not established that the subject tires were unreasonably dangerous as required by LSA-R.S. 9:2800.52, et seq. According to McPhate, he found no indications of tire failure and opined that there was nothing wrong with the tires. Uniroyal argued that the only cause of action upon which plaintiffs could rely was the failure to warn under LSA-R.S. 9:2800.57. However, because plaintiffs acknowledged their awareness of the danger of rollover in raised vehicles with large tires, Uniroyal again asserted that it had no duty to warn, assuming the tires had an unreasonably dangerous characteristic.
Because there was a deposition of a third expert for plaintiff, John Noettl, scheduled for June 16, 1997, in Phoenix, Arizona, Uniroyal requested an expedited hearing in an effort to avoid the additional discovery expenses. On May 20, Uniroyal's counsel received a telephone call from the trial judge informing Uniroyal that the hearing would be held on June 9. However, the trial judge would be sitting in Amite (Tangipahoa Parish) on that date, rather *670 than in Livingston (Livingston Parish), where the suit was filed. Accordingly, the trial court asked Uniroyal's counsel to contact all counsel of record and advise them of the hearing date and request that all counsel waive service of the motion for summary judgment and hearing notice and agree to the June 9 hearing in Amite. Any party with an objection to either the hearing location or the waiver of service was to contact the trial judge by telephone.
That same day, Uniroyal's counsel sent a facsimile advising opposing counsel about the expedited hearing date and location, the trial judge's request that service be waived, and that any objections were to be made to the trial judge through a telephone conference. The next morning, plaintiffs' counsel informed Uniroyal's counsel by telephone that he was not available for the June 9 hearing and that he would not waive service or agree to have the matter proceed before the trial judge in Amite. Thus, on May 22, a telephone conference was held with the judge and all counsel, including plaintiffs' counsel. During this conference, the trial judge ordered plaintiffs to produce an affidavit and update its discovery responses to set forth each opinion that Noettl intended to set forth regarding the tires. The trial court stated that he would not continue the motion for summary judgment hearing until he received a copy of Noettl's affidavit. Importantly, at no time during this conference did plaintiffs' counsel object to waiving service or having the matter heard in Amite.
On May 23, plaintiffs' counsel faxed a letter to the trial judge that outlined their causes of action against Uniroyal. In this letter, plaintiffs also argued that summary judgment was not proper and that the affidavit and other contentions showed that Uniroyal was an integral defendant in the case. A copy of Noettl's affidavit was attached to the letter. Again, there was no mention in the letter about any objection to waiving service or holding the hearing in Amite.
Another telephone conference was held with the trial judge to discuss the affidavit. As a result, the motion for summary judgment was continued until June 30, 1997, which was the next hearing date following the deposition of Noettl. Plaintiffs' counsel did not express any objection to the June 30 setting in Livingston. On June 30, plaintiffs' counsel was present in court to argue a motion for a protective order involving Rancho, another defendant in the suit. However, upon discovering that Uniroyal's motion for summary judgment was on the docket, plaintiffs' counsel informed the trial court that she was unaware that the motion for summary judgment was scheduled for the same date. Despite Uniroyal's objection to continuing the motion for summary judgment, the trial court continued the motion for summary judgment hearing until July 14 in Amite. Plaintiffs' counsel did not object to this resetting of the motion for summary judgment.
Although no objections had been made previously to the trial court, on July 9, counsel for plaintiffs filed exceptions to the motion for summary judgment and in the alternative, a memorandum in opposition to the motion for summary judgment. The exceptions asserted by plaintiffs were as follows: insufficiency of citation; insufficiency of service of process; improper venue; improper service; insufficient notice under article 966; and lack of authority to hear the matter outside of Livingston Parish.
At the July 14 hearing, the trial court denied the exceptions, finding that giving notice of the hearing in open court in Livingston Parish on June 30 was sufficient notice. The trial court also granted Uniroyal's motion for summary judgment in open court on July 14. The judgment dismissing plaintiffs' claims against Uniroyal with prejudice was signed on July 31, 1997. Plaintiffs appealed, asserting that the trial court erred in considering Uniroyal's motion for summary judgment, and in granting Uniroyal's motion for summary judgment.

*671 EXCEPTIONS FILED IN RESPONSE TO MOTION FOR SUMMARY JUDGMENT
Five days before the rescheduled hearing on the motion for summary judgment, plaintiffs filed written exceptions urging they did not receive proper notice of the July 14 hearing because they did not receive written notice from the clerk; they were not properly served with the motion for summary judgment because they were not served by the sheriff, nor were they served at least ten days before the hearing as set forth in LSA-C.C.P. art. 966; and finally, it was not proper to hear the motion for summary judgment in Amite, Louisiana, when the lawsuit was filed in Livingston, Louisiana.

Service and Notice
Plaintiffs complain that they were not served by the sheriff with the second motion for summary judgment or with written notice of the hearing on the motion. However, they do not deny receiving a copy of the motion and memorandum through the mail,[6] and they admit receiving oral notice from the trial court, in open court, on June 30, re-setting the hearing on the motion for summary judgment for July 14.
LSA-C.C.P. art. 966B requires service of a motion for summary judgment at least ten days before the time specified for the hearing. While service can sometimes be perfected by mail, pleadings that require an answer or appearance cannot be served by mail. See LSA-C.C.P. art. 1313. A motion for summary judgment is a pleading that requires some form of response, answer or appearance and therefore, service cannot be perfected by mail. Norwood v. Winn Dixie, 95-2123, p. 2 n. 1 (La.App. 1st Cir.5/10/96); 673 So.2d 360, 361 n. 1. If a pleading cannot be served by mail, it must be served by the sheriff. LSA-C.C.P. art. 1314.
The requirement of LSA-C.C.P. art. 966 B that the motion for summary judgment be served at least ten days before the time specified for the hearing is designed to give fair notice of the evidentiary and legal bases for the motion. The adverse party then has time to respond with evidentiary documentation of its own, either in the form of affidavits or discovery devices, and to be prepared to meet the legal argument of the moving party. Vardaman v. Baker Center, Inc., 96-2611, p. 5 (La.App. 1st Cir.3/13/98); 711 So.2d 727, 730.
Here, plaintiffs did not receive service of the motion for summary judgment (and supporting memorandum) from the sheriff, and were served only through the mail. However, plaintiffs had ample time and opportunities to object to the lack of service by the sheriff before the time plaintiffs filed their written exceptions. Specifically, the hearing on the motion for summary judgment was originally set for June 9, but was reset for June 30 by the trial court in a telephone conference with counsel for plaintiffs and Uniroyal, the purpose of which conference was to discuss plaintiffs' filing of an affidavit executed by their newest expert witness, Noettl. Plaintiffs' counsel did not object to the lack of service by the sheriff in this or any of the other telephone conferences. By not voicing any objection to the trial court during the many opportunities plaintiffs had to do so, we find that the formal service requirement was waived by plaintiffs' counsel.
Moreover, even if service was not waived, any such defect was cured as of June 30, when, in open court in the presence of counsel for Uniroyal and plaintiffs, the trial court reset the motion for summary judgment hearing for July 14. Certainly at this stage the purpose behind the service requirement of Article 966B was *672 satisfied, as the plaintiffs then had 14 days in which to prepare their formal opposition to Uniroyal's motion for summary judgment. This 14 days was in addition to the five to six weeks that the plaintiffs were already in possession of the motion for summary judgment and memorandum that had been sent in the mail. Finally, we note that Rule XI of the Twenty-First Judicial District Rules of Court provides that motions and exceptions may be fixed on oral or written motion.
Under these facts, plaintiffs have not shown that they were prejudiced by the failure to receive service by the sheriff of the motion for summary judgment or written notice of the July 14 hearing date. We find that the oral notice of the July 14 hearing date given in open court on June 30, without objection from plaintiffs' counsel, was sufficient to constitute adequate service and notice of the hearing on the motion for summary judgment.

Venue
Plaintiffs also contend that the trial court lacked the authority to hear the motion for summary judgment in Amite, which is in Tangipahoa Parish, rather than in Livingston, the parish in which the suit was filed. The Twenty-First Judicial District is comprised of Livingston, St. Helena and Tangipahoa Parishes. Pursuant to Rule I, section 3 of the Twenty-First Judicial District Rules of Court, the judges will sit in the various parishes comprising the district according to the Official Court Calendar. Section 7 of this rule provides that "[n]othing herein shall be construed as preventing the holding of court in any parish of the district as public business may require, or preventing any judge from presiding over another division or duty, by agreement of the two judges concerned, from time to time and for an indefinite duration." Thus, the trial judge had authority to hear the motion for summary judgment in Amite.
Moreover, as with the issue of the alleged lack of service, plaintiffs had several opportunities to object to holding the hearing in Amite, but failed to do so. As indicated, the initial June 9 hearing was set to take place in Amite, but plaintiffs never objected to this setting in the telephone conference with the trial judge. At the June 30 hearing in Livingston, plaintiffs could have objected to the resetting of the motion for summary judgment for July 14 in Amite. However, no objection was raised at that time. Again, plaintiffs have not shown that they were prejudiced by the hearing being held in Amite. The judge to whose division the case was assigned was the same judge who heard the motion for summary judgment. The fact he held the hearing in Amite, rather than Livingston, did not violate the Twenty-First Judicial District Rules of Court. Both Amite and Livingston are part of the Twenty-First Judicial District, and if plaintiffs had not requested a continuance, the hearing would have taken place in Livingston on June 30.

Prematurity
Plaintiffs also argue that Uniroyal's motion for summary judgment was premature because there was outstanding discovery to Uniroyal. However, on July 1, 1996, at a hearing on plaintiffs' motion to compel discovery responses from Uniroyal, plaintiffs' and Uniroyal's counsel agreed that all but one of the outstanding discovery requests were over-broad and did not need to be answered. The one exception was a request for identification of a tire depicted in a photograph as a tire manufactured by Uniroyal. The trial court ruled that Uniroyal did not have to identify the tire until plaintiffs obtained expert testimony establishing that the tires were defective. Although such expert testimony was never obtained by plaintiffs, Uniroyal subsequently identified the tire as being manufactured by them. However, plaintiffs still assert this motion for summary judgment is premature.
LSA-C.C.P. art. 967 allows, but does not require, a trial court to refuse a motion for summary judgment or order a continuance *673 to permit additional discovery if it appears from the opponent's affidavit that a party cannot present by affidavit facts essential to justify his opposition. Plaintiffs' counsel executed an affidavit stating that outstanding discovery would reveal Uniroyal's knowledge of the risks associated with putting oversized tires on vehicles. We disagree that this affidavit required continuance of the motion for summary judgment or a different result.
This suit was filed in March 1991. Thus, at the time the second motion for summary judgment was filed by Uniroyal, the suit had been pending for over six years. Plaintiffs were consulting with their third expert witness because none of the prior experts' opinions supported plaintiffs' claims against Uniroyal. Plaintiffs had ample time for discovery. Moreover, even if Uniroyal was aware of the risks associated with installing 33" tires on vehicles, this does not establish a failure to warn claim under the Louisiana Products Liability Act (LPLA) if plaintiffs were aware of the risks, which fact was not disputed by plaintiffs in their opposition to the motion for summary judgment. Thus, the motion for summary judgment was not premature.[7]
For these reasons, the trial court properly denied plaintiffs' exceptions and this assignment of error lacks merit.

MOTION FOR SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966; Rambo v. Walker, 96-2538, pp. 4-5 (La.App. 1st Cir.11/7/97); 704 So.2d 30, 32.
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Rambo, 704 So.2d at 32-33.

LOUISIANA PRODUCTS LIABILITY ACT
It is undisputed that this case is governed by the Louisiana Products Liability Act (LPLA), LSA-R.S. 9:2800.51, et seq. Under the LPLA, which establishes the exclusive theories of liability for manufacturers *674 of products which cause damage, there are four ways in which a product can be unreasonably dangerous and therefore render a manufacturer liable. LSA-R.S. 9:2800.52 and 9:2800.54. These four ways in which a product can be unreasonably dangerous are: construction or composition; design; inadequate warning; or nonconformance with an express warranty of the manufacturer of the product. LSA-R.S. 9:2800.54. Absent proof by the claimant that damages were proximately caused by a product that is unreasonably dangerous in one of these four ways, and the damages are from a reasonably anticipated use of the product, the manufacturer is not liable. LSA-R.S. 9:2800.54.
Plaintiffs clearly acknowledge their assertion of a claim for an inadequate warning. However, they deny that this is the only applicable theory of liability under the LPLA. On appeal, plaintiffs argue that further discovery could reveal that the tires are unreasonably dangerous in design, construction or composition, or by nonconformance with an express warranty of the manufacturer.
Although plaintiffs argue that this is a design defect case, the defect they assert pertains to the condition and operation of the vehicle once the vehicle has been modified with a suspension or lift kit and equipped with the subject tires. Specifically, their argument is that the tires are defective in design because when placed on a truck such as Clark's truck, which truck has been lifted or suspended, the 33-inch tires cause the center of gravity of the truck to be raised, increasing the likelihood of a rollover. Thus, we find that this argument actually sets forth an inadequate warning claim, not a defective design claim.
Uniroyal contends that the deposition testimony of plaintiffs' three experts, Rigol, McPhate and Noettl, fails to support and clearly defeats plaintiffs' argument that the tires are potentially defective in design, construction or composition, or by nonconformance with an express warranty of the manufacturer. We agree.
Importantly, none of plaintiffs' three experts could identify any defect in the design, construction or composition of the subject tires. Nor could they opine that Uniroyal failed to conform with an express warranty pertaining to the tires. McPhate testified that he could not find anything wrong with the tires, and there was no indication of tire failure. He specifically had no opinion regarding whether the tires were unreasonably dangerous in design or whether there was nonconformance with an express warranty from the manufacturer. Moreover, McPhate did not feel that there was an inadequate warning because in his opinion, there was nothing Uniroyal could have done to prevent the subject tires from being placed on the subject truck; therefore there was nothing they should have done.
While not as devastating to plaintiffs' case as McPhate's expert testimony, Noettl's opinions did not support potential claims by plaintiffs that the tires were unreasonably dangerous in design, construction or composition, or by nonconformance with an express warranty of the manufacturer. Although Noettl felt that Uniroyal should have warned of the reduction in the roll threshold caused by equipping Clark's truck with 33-inch tires, he testified as follows with respect to other potential claims:
Q.... [Y]ou don't have any indication that the tires at issue in this case were unreasonably dangerous in either composition or construction, manufacture?
A. No.
Q. Do you feel that the tires were defective in design?
A. No.
Q. Do you have any opinion or information that the tires do not conform to an express warranty provided by the manufacturer?
A. No.
*675 Finally, Rigol's affidavit did not contain any assertion that the subject tires were defective in design, construction or composition, or by failing to conform with an express warranty of the manufacturer. Thus, we can find no factual support for plaintiffs' contentions that these theories of liability are applicable to the subject case.
Accordingly, the only theory we must now address is whether Uniroyal failed to warn or adequately warn of an unreasonably dangerous condition or characteristic of the tire. Pursuant to LSA-R.S. 9:2800.57, a product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product. However, the manufacturer is not required to provide an adequate warning about his product when the user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
Initially, we note that the facts are undisputed that the owner's manual for the truck did not list 33-inch tires as appropriate for Clark's vehicle, and that it warned both against using larger tires on the vehicle and of the danger of a rollover. There is no evidence that the subject tires were designed for on-road use on a suspended Toyota truck. In fact, plaintiffs admit that as manufactured by Toyota, the 33-inch tires could not be used on a 1985 unmodified, unsuspended Toyota SR-5 pickup truck.
Even assuming that the tires contained an unreasonably dangerous characteristic in that they raised the center of gravity of a vehicle on which they were installed and thereby increased the propensity to rollover, the undisputed facts and testimony reveal that Uniroyal had no duty to warn of this danger because the plaintiffs were aware of the very risk about which they contend Uniroyal should have warned them. Claude and Susan Fowler testified that decedent once had a truck similar to Clark's, with the suspended body and big tires. However, about three years before Clark's accident, a friend of decedent became paralyzed after being involved in a rollover accident with the same type of truck and modifications. Almost immediately after this friend's accident, Claude and Susan made decedent get rid of his truck. The reason for the Fowlers' action was that they realized the trucks were dangerous when modified and equipped with the big tires, which raised the center of gravity and made rollovers more likely. Clark also testified that he was aware of the risk of rollover when 33-inch tires are placed on a truck that has been lifted or suspended. Despite this knowledge, he liked the look of the suspended truck with large tires and thus, chose to make the modifications. Accordingly, because plaintiffs were undisputedly aware of the very danger about which they now contend Uniroyal had a duty to warn, we find that Uniroyal had no duty to warn. See LSA-R.S. 9:2800.57.
Plaintiffs had the burden of proving at trial that one of the four ways in which a product can be unreasonably dangerous under the LPLA applies. However, the record establishes that plaintiffs lack factual support for any of these potential claims. At the time of the motion for summary judgment hearing, this litigation had been pending for over six years. Throughout these six years, plaintiffs had retained opinions from three different experts, none of whom found a defect in either design, construction or composition, or nonconformance with an express warranty by Uniroyal. Uniroyal had no duty to warn under the undisputed facts of this case. Therefore, the trial judge properly granted Uniroyal's motion for summary *676 judgment, dismissing plaintiffs' suit against Uniroyal with prejudice.

CONCLUSION
For these reasons, the judgment of the trial court is affirmed. Costs of the appeal are assessed to the plaintiffs/appellants.
AFFIRMED.
NOTES
[1] This case was initially filed on behalf of two sets of plaintiffs against several defendants. However, at the time this opinion was rendered, the litigation had been resolved as to all but the above-listed parties and their respective counsel.
[2] John Clark was an initial plaintiff in this action. However, Clark has since dismissed his personal injury claims arising out of the accident.
[3] At the time this judgment was rendered, it was a partial judgment because it dismissed the suit as to less than all of the defendants and the parties had not specifically agreed that the judgment shall constitute a final judgment. See LSA-C.C.P. art. 1915 A(1). Accordingly, this court issued a Rule to Show Cause why the appeal from a partial judgment should not be dismissed. In response, counsel for plaintiffs and Uniroyal jointly responded that they were the only remaining parties to the litigation, and they specifically agreed that the judgment shall constitute a final judgment. Therefore, this appeal is properly before us.
[4] Uniroyal was improperly referred to as B.F. Goodrich Tire and Rubber Company in the original petition. However, it was properly named in a supplemental and amending petition.
[5] These other defendants include The Four Wheeler Shop, Inc.; Rancho Industries, A Division of Monroe Auto Equipment Company, (the manufacturer of some of the lift kit components); and the State of Louisiana through the Department of Transportation and Development. Through supplemental and amending petitions, Casualty Reciprocal Exchange; Equity Mutual Insurance Company; Toyota Motor Sales, USA, Inc.; and Tony's Tire & Automotive, Inc. (the seller of the subject 33-inch B.F. Goodrich tires) were added as defendants.
[6] The certificate of service on the motion for summary judgment and supporting memorandum is dated May 16, 1997.
[7] Plaintiffs have also argued that their experts have never had the opportunity to examine the subject tires; thus, summary judgment is premature. However, we note that a former plaintiff, Clark, was the last person known to have custody of the tires. At Clark's most recent deposition in November 1994, Clark testified that he did not know were the tires were, and suspected that they had gotten rid of them because he was tired of being reminded of the accident. Accordingly, allowing more time for the purpose of examining the tires will be futile as the evidence has not been preserved by the plaintiffs.