868 So.2d 765 (2003)
Sharon HIGGINBOTHAM, as Natural Tutrix of Her Minor Child, Jacklyn Higginbotham
v.
COMMUNITY CHRISTIAN ACADEMY, INC. and Shelter Mutual Insurance Company.
No. 2003 CA 0462.
Court of Appeal of Louisiana, First Circuit.
December 31, 2003.
*766 Sean D. Fagan, Baton Rouge, Counsel for Plaintiff/Appellant Sharon Higginbotham, as Natural Tutrix of her Minor Child, Jacklyn Higginbotham.
Craig J. Fontenot, Baton Rouge, Counsel for Defendant/Appellee Community Christian Academy, Inc. and Shelter Mutual Insurance Company.
*767 Before: FOIL, FITZSIMMONS, and GAIDRY, JJ.
GAIDRY, J.
In this suit arising from personal injuries received on a school playground, plaintiff appeals a trial court judgment granting defendant's motion for summary judgment and dismissing plaintiff's suit with prejudice. For the following reasons, we reverse.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Sharon Higginbotham, filed this suit for damages after her daughter, Jacklyn Higginbotham, was injured while playing on the playground at Community Christian Academy. On March 22, 2001, Jacklyn, a fourth grade student at Community Christian Academy, was playing on the school's playground during recess. Prior to the end of recess, Jacklyn was being pushed on the merry-go-round by classmates. When the bell rang, signaling the end of recess, Jacklyn got off of the merry-go-round and, while running back to her classroom, ran directly into a four-by-four wooden post. The school notified Sharon Higginbotham, who took Jacklyn to the hospital, where a head CT scan revealed a skull fracture.
Sharon Higginbotham filed suit against both Community Christian Academy and their insurer, Shelter Mutual Insurance Company, alleging that the defendants are liable for Jacklyn's injuries because they failed to properly maintain the school premises and failed to properly supervise the children on the playground. Higginbotham claims that Jacklyn was being spun rapidly on the merry-go-round by two other children, which was against school rules, for several minutes before recess ended, and when she got off of the merry-go-round to return to class, she became dizzy and ran into the post. Higginbotham claims that had the students been properly supervised, the children would not have been allowed to spin Jacklyn to the point that she became dizzy and disoriented. Higginbotham also claims that the four-by-four post that Jacklyn struck had not been used for any purpose in several years and was an unreasonably dangerous condition on the school premises.
Defendants filed a motion for summary judgment, alleging that they were not liable for Jacklyn's injuries since the injuries were not caused by an unreasonably dangerous condition or a failure to provide adequate supervision. After a hearing, the trial court granted defendants' motion for summary judgment, noting that even if the wooden post had no utility whatsoever, there was no evidence that it created an unreasonable risk of harm and constituted a defect in the premises, because the pole was perfectly visible and had been in that location for years. The trial court also noted that there was no evidence that Jacklyn had been dizzy, but even if she had been, there was no proof of a causal connection between any lack of supervision and Jacklyn's injuries, and therefore Higginbotham could not recover for inadequate supervision.
Higginbotham appealed the trial court judgment granting defendants' motion for summary judgment and dismissing her suit with prejudice, making the following assignments of error:
1. The trial court erred in finding that an unused four-by-four post left on a children's playground did not present an unreasonable risk of harm.
2. The trial court erred in finding that there was no question of material fact concerning the utility of the four-by-four post.

*768 3. The trial court erred in finding that there was no question of material fact concerning the adequacy of the supervision afforded the children on the playground.
4. The trial court erred in finding that the school did not breach its duty to protect students like Jacklyn from the unreasonable risk of harm presented by the post.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034,writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment is favored and "is designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2).
The initial burden of proof remains with the mover and is not shifted to the nonmoving party until the mover has properly supported the motion and carried the initial burden of proof. Only then must the non-moving party "submit evidence showing the existence of specific facts establishing a genuine issue of material fact." See Scott v. McDaniel, 96-1509, p. 5 (La.App. 1 Cir. 5/9/97), 694 So.2d 1189, 1191-1192, writ denied, 97-1551 (La.9/26/97), 701 So.2d 991. If the non-moving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. arts. 966 and 967.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Sanders, 96-1751 at 7, 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 6 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528.

Inadequate Supervision
The Louisiana Supreme Court set forth the standard for evaluating a claim of inadequate supervision in Wallmuth v. Rapides Parish School Board, 01-1779 p. 7 (La.4/3/02), 813 So.2d 341.
1. Was the conduct of which the petitioner complains a cause-in-fact of the resulting harm?
2. What, if any, duties were owed by the respective parties?
3. Were the requisite duties breached?
4. Was the risk, and the resulting harm, within the scope of protection afforded by the duty breached?
5. Were actual damages sustained?
Teachers are answerable for the damage caused by their scholars, while under their superintendence. However, responsibility only attaches when the teachers might have prevented the act which caused the damages, and have not done it. La. C.C. art. 2320, Wallmuth at 346.
In this case, Margaret Wilson, principal of Community Christian Academy, testified at her deposition that it was against school rules for a child who was not riding the merry-go-round to push another child on the merry-go-round or for a child to push another child very fast on the merry-go-round. *769 If she had seen either of these activities taking place, she testified that she would have stopped it. Furthermore, she would not have allowed one of the boys involved to push Jacklyn on the merry-go-round at all. Mrs. Wilson stated that the reason for the playground rules is the children's safety.
Mrs. Wilson had seen Jacklyn on the merry-go-round earlier during recess that day, but had left the playground to go to a classroom before recess was over. At the time she saw Jacklyn, she only recalls seeing one of the boys nearby, and could not recall whether he was pushing her on the merry-go-round or not. Mrs. Wilson did not see Jacklyn hit the post, and did not know of any other teacher at the school who saw Jacklyn hit the post or saw Jacklyn after she hit the post.
Jacklyn testified that on the day of the accident, she and the two boys had been taking turns pushing each other on the merry-go-round throughout recess. The two boys had been running alongside the merry-go-round, spinning her fast, for about five minutes before the bell rang. She states that no teacher ever told them to stop what they were doing. They stopped spinning her when the bell rang, and she tried to run to class, but was dizzy and ran into the post. No teachers were around, so the two boys who had been pushing her on the merry-go-round came and helped her to the secretary's office. When she got to the secretary's office, Jacklyn told the secretary that she had gotten dizzy and ran into the post.
Sharon Higginbotham testified at her deposition that Jacklyn had told her that when she got off of the merry-go-round her head told her to go one way, but her legs went the other, and she hit the post.
According to Mrs. Wilson's testimony and the pictures of the playground attached to the depositions, the post is not situated in between the merry-go-round and the school; it is actually off to the side. Jacklyn would have been running in the wrong direction to get to her classroom when she hit the post.
Jacklyn's testimony that the boys were pushing her fast on the merry-go-round while running alongside, Mrs. Wilson's testimony that she would not have allowed this if she had seen it for safety reasons, and Jacklyn's testimony that she ran into the pole because she was dizzy from spinning fast on the merry-go-round, create an issue of fact as to whether there was adequate supervision in this case and whether the lack of supervision caused Jacklyn's injuries. Summary judgment is inappropriate on the issue of inadequate supervision.

Defect on Premises
Louisiana Civil Code article 2317.1 provides for liability of an owner or custodian of a thing for damage occasioned by its ruin, vice, or defect. Under article 2317.1, liability is only imposed upon the owner or custodian of a thing if all three of the following are proven:
1. He knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage;
2. The damage could have been prevented by the exercise of reasonable care; and
3. He failed to exercise such reasonable care.
In order to qualify as a defect in a thing, an imperfection must constitute a dangerous condition or pose an unreasonable risk of harm. Vigh v. State Farm Fire & Cas. Ins. Co., 97-0381 (La.App. 4 Cir. 11/19/97), 706 So.2d 480. There is no fixed rule for determining whether a thing presents an unreasonable risk of harm. In making this determination, the trier of fact *770 must balance the gravity and risk of harm against the utility of the thing. As part of this balance, the court should consider a broad range of social, economic, and moral factors, including the cost to defendant to avoid the risk and the social utility of plaintiff's conduct at the time of the accident. Shavers v. City of Baton Rouge, 00-1682 (La.App. 1 Cir. 9/28/01), 807 So.2d 883, appeal denied, 01-02848 (La.1/4/02), 805 So.2d 207. Simply put: the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362.
This balancing test is not a simple rule of law which can be applied mechanically to the facts of the case. Because of the plethora of factual questions and other considerations involved, the issue necessarily must be resolved on a case-by-case basis. Id.
In this case, testimony conflicted concerning the post's use. Jacklyn and Sharon Higginbotham testified that they had not seen the post used for any purpose, including volleyball and tetherball, since at least 1997 or 1998. Furthermore, they testified that they had not seen any hooks, nails, eye bolts, or other means for attaching a volleyball net to the post, since at least 1998. Mrs. Wilson testified that at the time of the accident, the post was used occasionally along with a mobile pole for volleyball. There were two mobile poles used for volleyball set up on a side playground, and Mrs. Wilson could not state how often the post involved in this accident was actually used for volleyball. She also stated that approximately a year or two before Jacklyn's accident, a teacher had used the post for tetherball for a short period of time. The younger children at the school also used the pole occasionally as a home base for playing tag.
Mrs. Wilson testified that she is aware that children often run into things for no apparent reason; in fact, one child at her school had run into a brick column and broke a tooth, and another had run into the wall of the school.
The trial court's initial statement that, even if the pole served no purpose at all, it was not unreasonably dangerous because it was visible, is incorrect. Under the balancing test, a pole with no social value or utility cannot outweigh, and thus justify, its potential harm to others. While we do not decide this pole's social value or utility, we do find that the conflicting testimony about the pole's use creates an issue of fact concerning whether the pole presented an unreasonable risk of harm. Summary judgment was inappropriate on this issue.

DECREE
We reverse the judgment of the trial court granting defendants' motion for summary judgment and dismissing plaintiff's suit. Costs of this appeal are assessed to defendants.
REVERSED.
FOIL, J., concurs in the result.