935 So.2d 703 (2006)
Dale GRANDA and Jo Ann Granda, Individually, and on Behalf of Their Minor Daughter, Meredith Granda
v.
STATE FARM MUTUAL INSURANCE COMPANY, the State of Louisiana Through the Department of Transportation & Development, the St. Tammany Parish Police Jury, BellSouth, Cleco Corporation, Matthew D. Richard and Michael D. Richard.
No. 2004 CA 1722.
Court of Appeal of Louisiana, First Circuit.
February 10, 2006.
*705 Edward J. Walters, Jr., Darrel J. Papillion, Moore, Walters, Thompson, Thomas, Papillion & Culiens, Baton Rouge, for Plaintiffs-Appellants Dale Granda and Jo Ann Granda, Individually and on behalf of their minor daughter, Meredith Granda.
Lawrence E. Abbott, Joseph H. Hart, IV, C. McChord Carrico, Abbott, Simses & Kuchler, APLC, New Orleans, for Defendant-Appellee St. Tammany Parish Police Jury.
William J. Crain, Jones Fussell, L.L.P., Covington, for Defendant-Appellee Bell-South Telecommunications, Inc.
Before: PARRO, McDONALD, and HUGHES, JJ.
*704 PARRO, J.
The plaintiffs, who are the parents of a minor child who was injured in a single vehicle accident, appeal from a judgment of the trial court, which granted a public entity's motion for summary judgment and dismissed the plaintiffs' claims against it. For the following reasons, we reverse and remand.

Factual and Procedural Background
On the afternoon of July 2, 1998, Matthew D. Richard (Matthew), the then seventeen-year-old son of Michael D. Richard (Mr. Richard), was driving a 1998 Chevrolet Blazer owned by his father. He was accompanied by his twelve-year-old sister, Abigail, and her friend, Meredith Granda.[1] The girls were seated in the rear seat of the vehicleAbigail on the driver's side and Meredith on the passenger's side. Matthew left his home with the intention of dropping something off for his mother at the local insurance office, bringing the two girls to a nearby movie theater, and going to work at a local grocery store. Matthew was aware that he had no time to waste if he did not want to be late for work. He was traveling east on Three Rivers Road, the road on which he lived and had traveled many times before, toward Highway 190.
Three Rivers Road is a two-lane, asphalt road belonging to the Parish of St. Tammany. The traveled portion of the roadway was approximately 18 feet wide. There was a limited shoulder, and a roadside drainage ditch along both sides of the road with an intersecting drainage culvert within the accident area that ran the width of the road, extending out from the edge of the roadway. Utility poles were located along the back edge of the ditch as mandated by a local ordinance. The posted speed limit was 35 miles per hour.
When Matthew was about one-half of a mile from his home, he veered off of the roadway while attempting to adjust the side-view mirrors on the Blazer, crossed the shoulder, descended into a ditch, and struck a utility pole.[2] Matthew had forgotten *706 that the mirror selection switch had a center stop that had prevented him from being able to make the desired adjustment. In order to determine how to adjust the mirrors, Matthew took his left hand off of the steering wheel and his eyes off of the road. He refocused his attention on his driving when he felt the car riding rough. When he attempted to steer back onto the roadway, Matthew found that the steepness of the ditch precluded his efforts to recover.
After leaving the roadway and shoulder and traveling in the ditch, the Blazer hit the intersecting culvert that was located approximately 160 feet from where the Blazer left the road. The vehicle then went airborne and struck a utility pole located approximately seven feet from the edge of the roadway and about 186 feet from the point at which the Blazer left the roadway.
In light of the injuries sustained by Meredith as a result of the accident, Meredith's parents, Dale and Jo Ann Granda, filed a petition for damages against Matthew, Mr. Richard, State Farm Mutual Insurance CompanyMr. Richard's automobile liability Insurer (State Farm), Louisiana Department of Transportation and Development (DOTD), St. Tammany Parish Police Jury (Parish), BellSouth Telecommunications, Inc. (BellSouth), and Cleco Corporation (Cleco). In their petition, the Grandas sought to have the Parish and/or DOTD held liable for their acts of negligence with regard to the sufficiency of the shoulders, placement of a utility pole, the posted speed, the slope of the ditch, and signage. In connection with the placement of the utility pole, the Grandas alleged that BellSouth and/or Cleco, as owners with garde, custody, and control of the utility pole, were liable for their negligence and/or strict liability for the placement of the utility pole in an unreasonably dangerous location.
Upon being granted authority to settle Meredith's claims against Matthew, Mr. Richard, and State Farm, the Grandas dismissed these defendants from the suit with full prejudice. Following a denial in its answer of ownership, garde, custody, and/or control of the utility pole in question, Cleco was dismissed, without prejudice, from the suit. Since Three Rivers Road was neither part of the Louisiana highway system nor maintained by the DOTD, the DOTD filed a motion for summary judgment seeking to be dismissed from the suit. Subsequently, the Grandas also voluntarily dismissed the DOTD, without prejudice. After the dismissal of these defendants, the remaining defendants, BellSouth and the Parish, filed separate motions for summary judgment. Both of these motions were granted by the trial court in separate judgments resulting in the dismissal of these remaining defendants. The Grandas have appealed the judgment in favor of the Parish, contending that summary judgment was improper since there are many factual disputes that were fatal to the granting of a summary judgment in this case.[3]

Summary Judgment Law
Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full-scale trial *707 when there is no genuine issue of material fact. Jarrell v. Carter, 632 So.2d 321, 323 (La.App. 1st Cir.1993), writ denied, 94-0700 (La.4/29/94), 637 So.2d 467. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Rambo v. Walker, 96-2538 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
The initial burden of proof is on the moving party. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the nonmoving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2); Clark v. Favalora, 98-1802 (La.App. 1st Cir.9/24/99), 745 So.2d 666, 673. Notably, issues that require the determination of reasonableness of acts and conduct of parties under all facts and circumstances of the case can not ordinarily be disposed of by summary judgment. Matthews v. Ashland Chemical, Inc., 703 F.2d 921, 925-26 (5th Cir.1983).

Analysis
On appeal, the Grandas have seemingly abandoned their argument that the Parish is liable as a result of the location of the utility pole. Their appellate argument is instead focused on the width of the travel lane and the condition of the shoulder. The Grandas contend that the documentation in the record shows that there are genuine issues of material fact as to the existence of defects in the roadway and shoulder that prevented Matthew from regaining control of his vehicle.
In support of their argument, the Grandas submitted the deposition testimony, written report, and affidavit of Dr. Edward Rhomberg, who was offered as an expert in engineering.[4] Dr. Rhomberg explained that the lane in which Matthew was traveling should have been ten or eleven feet instead of nine feet in width. He opined that the narrower lane, combined with an inadequate shoulder, were causally related to Matthew entering the roadside ditch. This evidence, the Grandas argue, gave rise to a major factual dispute that should have served as a basis for denying the Parish's motion for summary judgment. Alternatively, relying on the opinion of Dr. Rhomberg, they maintain that even if the lane width was not a contributing cause for Matthew leaving the roadway and that Matthew's inattentiveness and inexperience set the accident in motion, there is a genuine issue of material fact as to whether the condition of the shoulder prevented him from regaining control of his vehicle and was thus a cause-in-fact of Meredith's injuries.
Louisiana Civil Code articles 2315 and 2316 provide the basic codal foundation for delictual liability for intentional torts and negligence in our state. Louisiana Civil Code articles 2317 and 2317.1 define the basis for delictual liability for defective *708 things.[5] In pertinent part, LSA-C.C. art. 2317.1 provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
Thus, to establish liability based on ownership or custody of a thing, the plaintiff must show that (1) the defendant was the owner or custodian of a thing which caused the damage, (2) the thing had a ruin, vice,[6] or defect that created an unreasonable risk of harm,[7] (3) the ruin, vice, or defect of the thing caused the damage, (4) the defendant knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect, (5) the damage could have been prevented by the exercise of reasonable care, and (6) the defendant failed to exercise such reasonable care. LSA-C.C. art. 2317.1.
A governmental entity that owns or has custody of a public roadway owes a duty to the traveling public to maintain the roadway in a condition that is reasonably safe for vehicular use and does not present an unreasonable risk of harm to the motoring public exercising ordinary care and reasonable prudence. Myers v. State Farm Mutual Automobile Insurance Company, 493 So.2d 1170, 1171-72 (La. 1986);[8]Brown v. Louisiana Indemnity Company, 97-1344 (La.3/4/98), 707 So.2d 1240, 1242, citing LSA-R.S. 48:21;[9]Wilkinson v. Town of Baker, 506 So.2d 739, 742 (La.App. 1st Cir.1987); Robinson v. State, Through Department of Transportation and Development, 454 So.2d 257, 260 (La.App. 1st Cir.), writ denied, 458 So.2d 122 (La.1984). The governmental entity must maintain the shoulders in such a condition that they do not present an unreasonable *709 risk of harm to motorists using the adjacent roadway and to others, such as pedestrians, who are using the area in a reasonably prudent manner. Brown, 707 So.2d at 1242; Oster v. Department of Transportation and Development, 582 So.2d 1285, 1289-91 (La.1991). A governmental entity's duty to maintain safe shoulders encompasses the foreseeable risk that for any number of reasons a motorist might find himself on, or partially on, the shoulder. Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566, 572; Rue v. State, Department of Highways, 372 So.2d 1197, 1199 (La.1979). This duty extends not only to prudent and attentive drivers, but also to motorists who are slightly exceeding the speed limit or momentarily inattentive. Ledbetter v. State, Through Louisiana Department of Transportation and Development, 502 So.2d 1383, 1387 (La.1987).
This duty, however, does not render a governmental entity the guarantor for the safety of all the motoring public. Further, the governmental entity is not the insurer for all injuries or damages resulting from any risk posed by obstructions on or defects in the roadway or its appurtenances. Graves, 703 So.2d at 572; Briggs v. Hartford Insurance Company, 532 So.2d 1154, 1156 (La.1988). Moreover, not every imperfection or irregularity will give rise to liability, but only a condition that could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983). The existence of an unreasonable risk of harm may not be inferred solely from the fact that an accident occurred. Netecke v. State, Through DOTD, 98-1182, 98-1197 (La.10/19/99), 747 So.2d 489, 495. Whether a governmental entity breached its duty to the public, by knowingly maintaining a defective or unreasonably dangerous roadway, depends on all the facts and circumstances determined on a case by case basis. Campbell v. Louisiana Department of Transportation and Development, 94-1052 (La.1/17/95), 648 So.2d 898, 901-02.
In attempting to hold the Parish liable, the Grandas urged the width of the lane and the condition of the shoulder as possible defects. Notably, the jurisprudence of this court has generally required the existence of a defective condition of the surface of the roadway that is causally related to the vehicle leaving the road for a governmental entity to be liable. Capone v. Ormet Corporation, 01-0060 (La.App. 1st Cir.6/21/02), 822 So.2d 684, 704, writ denied, 02-2379 (La.11/22/02), 829 So.2d 1051. In Capone, this court concluded, based on the evidence in the record after a trial on the merits, that Capone's negligence caused him to leave the roadway; a defect in and/or on the roadway did not. Relying on Cormier v. Comeaux, 98-2378 (La.7/7/99), 748 So.2d 1123, 1129-30,[10] this court in Capone noted that such a finding should conclude the analysis. Nonetheless, out of an abundance of caution, after considering pertinent jurisprudence by the Louisiana Supreme Court, the Capone court also analyzed liability pursuant to the unreasonable risk of harm criterion of Netecke. Capone, 822 So.2d at 704. Applying the unreasonable risk of harm analysis, this court, after recognizing the economic reality that it is impossible for governmental entities to bring all roads up to present, ideal, design standards, found that the two-foot shoulder, the 1:1.7 roadside ditch slope, and the lack of a clear zone for recovery did not constitute an unreasonable *710 risk of harm. Capone, 822 So.2d at 703-05.
Relative to his assertion that the width of the shoulder constituted a defect, Dr. Rhomberg opined that Three Rivers Road was defective because of its narrow shoulders in the area in question, which ranged from 12 to 24 inches. According to Dr. Rhomberg, once the wheels of Matthew's vehicle got over the edge of the shoulder he began to lose control, rendering it virtually impossible for him to regain control of the vehicle upon entering the roadside ditch.
The determination of whether the shoulder is dangerous and creates a defective condition which may give rise to liability on the part of a governmental entity is a factual one. The court should consider the physical aspects of a roadway and shoulder, the frequency of accidents at that place in the highway, and the testimony of expert witnesses. See Thompson v. Coates, 29,333 (La.App. 2nd Cir.5/7/97), 694 So.2d 599, 602, writs denied, 97-1442 and 97-1521 (La.9/26/97), 701 So.2d 985 and 987. In light of the documentation in the record offered in support of and in opposition to the Parish's motion for summary judgment, we conclude that there is a genuine issue of material fact as to whether the condition of the shoulder of the road presented an unreasonable risk of harm that may have caused damage to the Grandas. Accordingly, the Parish was not entitled to summary judgment as a matter of law.[11]

Decree
For the foregoing reasons, the summary judgment granted in favor of the St. Tammany Parish Police Jury is reversed, and this case is remanded for further proceedings. Costs of this appeal in the amount of $1,254.25 are assessed to the St. Tammany Parish Police Jury.
REVERSED AND REMANDED.
NOTES
[1] Meredith, who resided in Peoria, Illinois, was visiting with Abigail.
[2] Admittedly, Matthew had learned in driver's education class that the mirrors should be adjusted before driving.
[3] The Grandas have also appealed the judgment in favor of BellSouth, and this court has rendered its opinion in that appeal this date. Granda v. State Farm Mutual Insurance Company, 04-2012 (La.App. 1st Cir.2/10/06), 935 So.2d 698, 2006 WL 305845.
[4] The Grandas also offered excerpts from the depositions of Deputy Guy Willie, the deposition of Meredith Granda, and the accident report of Deputy Willie.
[5] The 1996 legislation enacting LSA-C.C. art. 2317.1, effective April 16, 1996, abolished the concept of strict liability governed by prior interpretations of LSA-C.C. art. 2317. See Dennis v. The Finish Line, Inc., 99-1413, 99-1414 (La.App. 1st Cir.12/22/00), 781 So.2d 12, 20 n. 8, writ denied, 01-0214 (La.3/16/01), 787 So.2d 319. A more appropriate term now for liability under LSA-C.C. arts. 2317 and 2317.1 and LSA-R.S. 9:2800 might be "custodial liability," but such liability is nevertheless predicated upon a finding of knowledge or constructive knowledge. See Rogers v. City of Baton Rouge, 04-1001 (La.App. 1st Cir.6/29/05), 916 So.2d 1099, 1102.
[6] The term "vice" has been defined in the jurisprudence as an unreasonable risk of injury (or harm) to another. See Loescher v. Parr, 324 So.2d 441, 446-47 (La.1975).
[7] See Moory v. Allstate Insurance Company, 04-0319 (La.App. 1st Cir.2/11/05), 906 So.2d 474, 480, writ denied, 05-0668 (La.4/29/05), 901 So.2d 1076; Higginbotham v. Community Christian Academy, Inc., 03-0462 (La.App. 1st Cir.12/31/03), 868 So.2d 765, 769.
[8] In Myers, a motorist on a state roadway took evasive action and veered right to avoid an oncoming vehicle. His vehicle slid into the roadside ditch and ran into a large oak tree located on the right side of the roadside ditch causing serious injuries to a guest passenger. On review, the supreme court reversed the trial court and this court's judgments in favor of the plaintiffs. Myers, 493 So.2d at 1173.
[9] Brown involved the issue of what duty DOTD owed to a motorist who struck an obstruction in the roadside ditch. In Brown, the motorist ran off the roadway in a curve, traveled thirty-nine feet on the shoulder, traveled another thirty feet in the roadside ditch and struck a driveway, became airborne and, thereafter, struck two pine trees. The supreme court rejected the trial court's determination that DOTD was responsible for any damage caused by the driveway in the roadside ditch. Brown, 707 So.2d at 1244.
[10] In Cormier, the driver of a vehicle apparently went to sleep and drove off the roadway across the shoulder and into the back embankment of the roadside ditch.
[11] Notably, we do not suggest that the Grandas can or should prevail on the merits of the case, but we only conclude that based on the record in this case, a trial on the merits is warranted.