PARRO, J.
|aThe plaintiffs, who are the parents of a minor child who was injured in a single vehicle accident, appeal from a judgment of the trial court, which granted a utility-company’s motion for summary judgment and dismissed the plaintiffs’ claims against it. For the following reasons, we affirm.

Factual and Procedural Background

On the afternoon of July 2, 1998, Matthew D. Richard (Matthew), the then seventeen-year-old son of Michael D. Richard (Mr. Richard), was driving a 1998 Chevrolet Blazer owned by his father. He was accompanied by his twelve-year-old sister, Abigail, and her friend, Meredith Granda.[1] The girls were seated in the rear seat of the vehicle — Abigail on the driver’s side and Meredith on the passenger’s side. Matthew left his home with the intention of dropping something off for his mother at the local insurance office, bringing the two girls to a nearby movie theater, and going to work at a local grocery store. Matthew was aware that he had no time to waste if he did not want to be late for work. He was traveling east on Three Rivers Road, the road on which he lived and had traveled many times before, toward Highway 190.
Three Rivers Road is a two-lane, asphalt road belonging to the Parish of St. Tammany. The traveled portion of the roadway was approximately 18 feet wide. There was a limited shoulder, and a roadside drainage ditch along both sides of the road with an intersecting drainage culvert within the accident area that ran the width of the road, extending out from the edge of the roadway. Utility poles were located along the back edge of the ditch as mandated by a local ordinance. The posted speed limit was 35 miles per hour.
When Matthew was about one-half of a mile from his home, he veered off of the roadway while attempting to adjust the side-view mirrors on the Blazer, crossed the shoulder, descended into a roadside ditch, and struck a utility pole.[2] Matthew had forgotten that the mirror selection switch had a center stop that had prevented him from Lbeing able to make the desired adjustment. In order to determine how to adjust the mirrors, Matthew took his left hand off of the steering wheel and his eyes off of the road. He refocused his attention on his driving when he felt the car riding rough. When he attempted to steer back onto the roadway, Matthew found that the steepness of the ditch precluded his efforts to recover.
After leaving the roadway and shoulder and traveling in the ditch, the Blazer hit the intersecting culvert that was located approximately 160 feet from where the Blazer left the road. The vehicle then went airborne and struck a utility pole located approximately seven feet from the edge of the roadway about 186 feet from the point at which the Blazer left the roadway.
In light of the injuries sustained by Meredith as a result of the accident, Meredith’s parents, Dale and Jo Ann Granda, filed a petition for damages against Matthew, Mr. Richard, State Farm Mutual Insurance Company — Mr. Richard’s automobile liability insurer (State Farm), Louisiana Department of Transportation and Development (DOTD), St. Tammany Parish Police Jury (Parish), BellSouth Telecommunications, Inc. (BellSouth), and Cle-co Corporation (Cleco). The Grandas sought to have the Parish and/or DOTD *701 held liable for their acts of negligence with regard to the sufficiency of the shoulders, placement of a utility pole, the posted speed, the slope of the ditch, and signage. In connection with the placement of the utility pole, the Grandas alleged that Bell-South and/or Cleco, as owners with garde, custody, and control of the utility pole, were liable for their negligence and/or strict liability for the placement of the utility pole in an unreasonably dangerous location.
Upon being granted authority to settle Meredith’s claims against Matthew, Mr. Richard, and State Farm, the Grandas dismissed these defendants from the suit with full prejudice. Following a denial in its answer of ownership, garde, custody, and/or control of the utility pole in question, Cleco was dismissed, without prejudice, from the suit. Since Three Rivers Road was neither part of the Louisiana highway system nor maintained by the DOTD, the DOTD filed a motion for summary judgment seeking to be dismissed from the suit. Subsequently, the Grandas also voluntarily dismissed the DOTD, without prejudice. After the dismissal of these defendants, the remaining defendants, BellSouth |4and the Parish, filed separate motions for summary judgment. Both of these motions were granted by the trial court in separate judgments resulting in the dismissal of these remaining defendants. The Grandas have appealed the judgment in favor of BellSouth, contending that summary judgment was improper since the placement of the utility pole played a role in causing their injuries.[3]

Summary Judgment Law

Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jarrell v. Carter, 632 So.2d 321, 323 (La.App. 1st Cir.1993), writ denied, 94-0700 (La.4/29/94), 637 So.2d 467. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Rambo v. Walker, 96-2538 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
The initial burden of proof is on the moving party. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party’s burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the nonmoving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2); Clark v. Favalora, 98-1802 (La.App. 1st Cir.9/24/99), 745 So.2d 666, 673.
| ¡¡Analysis
Louisiana Civil Code articles 2315 and 2316 provide the basic codal foundation for *702 delictual liability for intentional torts and negligence in our state. Louisiana Civil Code articles 2317 and 2317.1 define the basis for delictual liability for defective things.[4] In pertinent part, LSA-C.C. art. 2317.1 provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the niin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
Thus, to establish liability based on ownership or custody of a thing, the plaintiff must show that (1) the defendant was the owner or custodian of a thing which caused the damage, (2) the thing had a ruin, vice,[5] or defect that created an unreasonable risk of harm,[6] (3) the ruin, vice, or defect of the thing caused the damage, (4) the defendant knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect, (5) the damage could have been prevented by the exercise of reasonable care, and (6) the defendant failed to exercise such reasonable care. LSA-C.C. art. 2317.1.
The risk that occurs must be within the scope of the defendant’s duty to exercise reasonable care. Thus, the court must decide if the risk which caused the damage is within the ambit of protection of the duty. In other words, under the facts and circumstances of this case, did Bell-South owe a duty to protect the motorist and his passengers from the harm encountered when his vehicle left the roadway and struck the utility pole? See Bieber v. State Farm Mutual Automobile Insurance Company, 99-0527 (La.App. 1st Cir.3/31/00), 764 So.2d 988, 992, writ denied, 00-1253 (La.6/16/00), 765 So.2d 337.
1 flThe utility pole was not located in the traveled portion of the roadway or on the shoulder of the roadway, so it did not pose an unreasonable risk of harm to those using the roadway. It was located seven feet from the edge of the roadway on the back slope of the roadside ditch. Cleco had placed the subject utility pole in 1982. The ownership and/or custody of the pole had been transferred to BellSouth in 1986. Its location has not been disturbed. There is no record of BellSouth having performed any work on the subject pole since it was acquired from Cleco in 1986. The BellSouth project manager in the Coving-ton area averred in an affidavit that approximately 90 percent of the poles in his geographic area are located on the back edge of roadside ditches similar to the placement of the subject pole. There is no *703 evidence that the pole had an intrinsic defect. It was in plain view. The record shows that there were no prior accidents or complaints known to BellSouth relating to the specific utility pole struck by Matthew.
On the other hand, Matthew was looking at the adjustments for the side mirrors of his Blazer when the wheels left the roadway and shoulder. He then traveled approximately 160 feet, a large portion of which was in the roadside ditch, hit a concrete culvert located in an intersecting drainage ditch, became airborne, and struck the utility pole located seven feet from the edge of the roadway on the back slope of the roadside ditch at a point located 186 feet, 2 inches from the point at which the Blazer left the roadway.
A motorist has a duty to control an automobile and to maintain a proper lookout. Bieber, 764 So.2d at 991. The roadway and shoulder of the highway are intended for vehicular use by statutory definitions; however, a roadside ditch is not so intended. See Capone v, Ormet Corporation, 01-0060 (La.App. 1st Cir.6/21/02), 822 So.2d 684, 693, writ denied, 02-2379 (La.11/22/02), 829 So.2d 1051. A roadside ditch is constructed and maintained for the purpose of draining the highway. Because the roadside ditch is intended for drainage and not vehicular use, there was no duty on the part of BellSouth to construct or maintain the utility pole located on the back slope of the ditch in such a way that it did not pose an unreasonable risk of danger for vehicles in the ditch. Rogers v. Parish of East Baton Rouge, 577 So.2d 1068, 1072 (La.App. 1st Cir.), writ denied, 580 So.2d 925 (La.1991); see Capone, 822 So.2d 684, 702-03. A utility company has no 17general obligation to guard against rare exigencies such as an out-of-control vehicle leaving a traveled roadway.[7] Bieber, 764 So.2d at 991-92. Therefore, the granting of BellSouth’s motion for summary judgment on the basis that it did not owe a duty to the Grandas was appropriate.

Decree

For the foregoing reasons, the summary judgment dismissing BellSouth from this case is affirmed. Costs of this appeal are assessed against the Grandas.
AFFIRMED.

. Meredith, who resided in Peoria, Illinois, was visiting with Abigail.

. Admittedly, Matthew had learned in driver’s education class that the mirrors should be adjusted before driving.

. The Grandas have also appealed the judgment in favor of the Parish, and this court has rendered its opinion in that appeal this date. Granda v. State Farm Mutual Insurance Company, 04-1722 (La.App. 1st Cir. 2/10/06), 935 So.2d 703, 2006 WL 528355.

.The 1996 legislation enacting LSA-C.C. art. 2317.1, effective April 16, 1996, abolished the concept of strict liability governed by prior interpretations of LSA-C.C. art. 2317. See Dennis v. The Finish Line, Inc., 99-1413, 99-1414 (La.App. 1st Cir. 12/22/00), 781 So.2d 12, 20 n. 8, writ denied, 01-0214 (La.3/16/01), 787 So.2d 319. A more appropriate term now for liability under LSA-C.C. arts. 2317 and 2317.1 might be "custodial liability," but such liability is nevertheless predicated upon a finding of knowledge or constructive knowledge. See Rogers v. City of Baton Rouge, 04-1001 (La.App. 1st Cir.6/29/05), 916 So.2d 1099, 1102.

. The term “vice” has been defined in the jurisprudence as an unreasonable risk of injury (or harm) to another. See Loescher v. Parr, 324 So.2d 441, 446-47 (La.1975).

. See Moory v. Allstate Insurance Company, 04-0319 (La.App. 1st Cir.2/11/05), 906 So.2d 474, 480, writ denied, 05-0668 (La.4/29/05), 901 So.2d 1076; Higginbotham v. Community Christian Academy, Inc., 03-0462 (La.App. 1st Cir. 12/31/03), 868 So.2d 765, 769.

. A duty to relocate a utility pole may arise where experience has shown that the location of the pole presents an unreasonable risk of harm to the motoring public. See Hebert v. Southwest Louisiana Electric Membership Corporation, 95-405 (La.App. 3rd Cir. 12/27/95), 667 So.2d 1148, 1160, writs denied, 96-0277 (La.5/17/96), 673 So.2d 607, and 96-0798 (La.5/17/96), 673 So.2d 608. Based on the undisputed facts of this case, it is clear that no duty was owed by BellSouth to the Gran-das to relocate the utility pole to any point beyond the back edge of the roadside ditch.