36 So.3d 333 (2010)
Gregory J. WENDLING
v.
Michael A. CHAMBLISS and National Mutual Insurance Company.
No. 2009 CA 1422.
Court of Appeal of Louisiana, First Circuit.
March 26, 2010.
*334 Jeremy K. Lee, Richard A. Tonry, Michael C. Ginart, Jr., Cullen A. Tonry, Kim C. Jones, Chalmette, LA, for Plaintiff/Appellant, Gregory J. Wendling.
Adrianne L. Baumgartner, Dan Richard Dorsey, Emily S. Morrison, Covington, LA, for Defendant/Appellee, Mississippi Farm Bureau Casualty Insurance Company.
Before DOWNING, GAIDRY and McCLENDON, JJ.
McCLENDON, J.
The plaintiff appeals a summary judgment in favor of the defendant and finding Mississippi law, rather than Louisiana law, applies to the uninsured/underinsured motorist (UM) coverage at issue herein. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL HISTORY
On November 9, 2005, Gregory Wendling, a Mississippi resident,[1] was injured in an automobile accident on Interstate Highway 12 near Slidell, Louisiana, when he was rear-ended by a vehicle driven by Michael Chambliss, also a resident of Mississippi. Thereafter, Mr. Wendling filed suit against Mr. Chambliss and his liability insurer, Nationwide Mutual Insurance Company (Nationwide), seeking damages for his injuries. On June 30, 2008, Mr. Wendling filed an amended petition adding his UM carrier, Mississippi Farm Bureau Casualty Insurance Company (Farm Bureau), as a defendant. Mr. Wendling later settled with Mr. Chambliss and Nationwide in the amount of $15,000, the policy limits, and dismissed them from the lawsuit on July 23, 2008.
Farm Bureau answered the petition and specifically pleaded that under Louisiana's choice-of-law rules, Mississippi law applied to the terms of the UM policy issued in Mississippi to a Mississippi resident. Farm Bureau further affirmatively pleaded that its policy specifically excluded UM coverage to an insured who settles a bodily injury or property damage claim without Farm Bureau's express written consent and that Mr. Wendling settled with Mr. Chambliss and Nationwide without the consent of Farm Bureau.
On January 23, 2009, Farm Bureau filed a motion for summary judgment, seeking the dismissal of Mr. Wendling's claims based upon the terms of the insurance policy under Mississippi law. Again, Farm Bureau urged that it was entitled to judgment as a matter of law, based on Mr. Wendling's failure to seek Farm Bureau's *335 consent prior to his settlement with Mr. Chambliss and Nationwide, which extinguished any subrogation rights Farm Bureau had against Mr. Chambliss. Mr. Wendling opposed the motion and Farm Bureau replied to the opposition.
On April 1, 2009, the trial court heard the matter. The court determined, after "weighing the interest of Louisiana and Mississippi, that clearly Mississippi has the predominant interest in the case, with few competing factors on the other side." Because Mississippi law, in contrast to Louisiana law, upholds insurance policy provisions that exclude UM coverage to an insured who executes a settlement without the consent of the UM insurer, the trial court granted Farm Bureau's motion for summary judgment. Judgment was signed on April 14, 2009, dismissing Mr. Wendling's claims against Farm Bureau with prejudice. Mr. Wendling appealed.

SUMMARY JUDGMENT LAW
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Granda v. State Farm Mutual Insurance Company, 04-2012, p. 4 (La.App. 1 Cir. 2/10/06), 935 So.2d 698, 701. Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B.
On a motion for summary judgment, the initial burden of proof is on the moving party. However, if the moving party will not bear the burden of proof at trial on the matter before the court, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the non-moving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial. Failure to do so shows that there is no genuine issue of material fact. LSA-C.C.P. art. 966 C(2); Babin v. Winn-Dixie Louisiana, Inc., 00-0078, p. 4 (La.6/30/00), 764 So.2d 37, 40.
Summary judgments are reviewed on appeal de novo. Granda, 04-2012 at p. 4, 935 So.2d at 701. Thus, this court uses the same criteria as the trial court in determining whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether mover is entitled to judgment as a matter of law. Jones v. Estate of Santiago, 03-1424, p. 5 (La.4/14/04), 870 So.2d 1002, 1006.

DISCUSSION
On appeal, Mr. Wendling asserts that the trial court erred in granting summary judgment when Louisiana's policies would be most seriously impaired when compared to Mississippi's. Furthermore, Mr. Wendling asserts that Louisiana law should apply, as he is a Louisiana resident and domiciliary who was displaced after Hurricane Katrina, and whose pharmacy profession consists of businesses in Louisiana.
Pursuant to the supreme court case of Champagne v. Ward, 03-3211 (La.1/19/05), 893 So.2d 773, which like the case herein, involved an accident that occurred in Louisiana causing injury to a Mississippi resident who was driving a vehicle covered by an insurance policy negotiated and issued in Mississippi, we are instructed to first determine that there is a difference between Louisiana's UM law and the UM law of the foreign state. Once that determination is made, we are then to conduct a choice-of-law analysis, as codified by LSA-C.C. arts. 3515 and 3537, to decide which *336 state's law applies to the interpretation of the UM policy. Champagne, 03-3211 at p. 22, 893 So.2d at 786. Accordingly, we look to Mississippi and Louisiana law, as it is relevant to the facts of this case.
Under Mississippi law, where the uninsured motorist statutes grant an insurer the right of subrogation, and a provision in the policy precludes settlement with an uninsured motorist without the consent of the insurer, the provision of the policy is valid and will be upheld. United States Fidelity and Guar. Co. v. Hillman, 367 So.2d 914, 921 (Miss.1979). See also United States Fidelity & Guar. Co. v. Knight, 882 So.2d 85, 92-93 (Miss.2004). In Louisiana, however, public policy prohibits inclusion of "prior consent" clauses in insurance contracts. See Trautman v. Poor, 96-267, pp. 8-9 (La.App. 3 Cir. 12/11/96), 685 So.2d 516, 521. See also Hebert v. Green, 311 So.2d 223, 229 (La. 1975). Therefore, in accordance with Champagne, a choice-of-law analysis is necessary to determine which state's law applies to the interpretation of the UM contract.
Louisiana Civil Code Article 3515 provides:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
Additionally, LSA-C.C. art. 3537 provides:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
As explained in Champagne, these conflict-of-laws provisions afford the balancing of competing interests between the involved states. Champagne, 03-3211 at p. 22, 893 So.2d at 786.
In the case sub judice, Mr. Wendling and Farm Bureau concede that a choice-of-law analysis is necessary. Farm Bureau asserts that Mr. Wendling's contacts with Mississippi predominate to such an extent that Mississippi laws would be most impaired if not applied. However, Mr. Wendling contends that, unlike the plaintiff in Champagne, he is a Louisiana resident with such abundant Louisiana connections that Louisiana law should apply.
In support of its motion for summary judgment, Farm Bureau submitted a certified true and correct copy of the Mississippi *337 insurance policy issued to Mr. Wendling, which contained a prior consent clause. Further, Farm Bureau submitted the affidavit of Luther Cooley, an adjuster with Farm Bureau. Mr. Cooley attached to and referenced in his affidavit a copy of a letter requesting Mr. Wendling's UM policy limits, with accompanying documentation, received from plaintiff's counsel by facsimile transmission on July 23, 2008. The documentation included a copy of the police report for the accident, medical reports, and medical records. This evidence showed that Mr. Wendling settled with Mr. Chambliss and Nationwide for Mr. Chambliss's policy limits of $15,000, and that Farm Bureau did not know of the settlement until the July 23, 2008 letter to Mr. Cooley. Also, the police report indicated that Mr. Wendling held a Mississippi driver's license, that his vehicle was registered in Mississippi, and that he had a Poplarville, Mississippi address.
Mr. Wendling, in opposition, asserted his strong ties with Louisiana. In connection therewith, he attached to his memorandum three documents from the Corporations Database of the commercial division of the Louisiana Secretary of State and a copy of a petition for damages that he filed in August 2006 in an unrelated lawsuit. The petition, filed against an insurer seeking Katrina-related damages to two pieces of property he owned in St. Bernard Parish, alleged that he was a resident of and domiciled in St. Bernard Parish. Mr. Wendling asserted that these records established that, as a pharmacist, he currently owns and operates a pharmacy in Slidell, Louisiana and that he previously owned and operated two other pharmacies in Louisiana in St. Bernard Parish until Hurricane Katrina. Mr. Wendling further argued that he drives to Slidell five days a week, that he has received all of his post-accident medical treatment in Louisiana, and that although his domicile may have changed after the hurricane, which he denied, he was still a resident of Louisiana.[2]
In response to the opposition, Farm Bureau submitted the affidavit of Rodney Smith, an associate underwriting manager with Farm Bureau. Mr. Smith attested to reviewing Mr. Wendling's original application for the insurance policy covering the vehicle involved in the accident, and attached a true copy to his affidavit. Mr. Smith explained that to be insured by Farm Bureau, vehicles must be principally garaged in Mississippi; that the application, dated January 4, 2005, showed that Mr. Wendling and his wife possessed Mississippi *338 driver's licenses; that the vehicles insured under the policy were listed at a Poplarville, Mississippi address with a Mississippi telephone number; and that the policy has been renewed since January 2005, at the same address. Mr. Smith also attached to his affidavit a copy of the November 2003 application for a dwelling package policy at the Poplarville, Mississippi address, when Mr. Wendling's builders risk insurance policy was converted to a homeowner's policy. Mr. Smith stated that the dwelling package policy application indicated that Mr. Wendling represented to Farm Bureau that his house in Poplarville was his full-time home, and not a secondary, vacation, or rental home.
Before we can balance the competing interests between Louisiana and Mississippi, we must first identify the pertinent contacts of each state. In order to do that, we must address Mr. Wendling's assertion that he remained a Louisiana resident. Based on our review of the record, we conclude that Mr. Wendling was a Mississippi resident at the time of the accident at issue herein. The evidence clearly establishes his Mississippi residency, and Mr. Wendling admitted as much in his petition in this matter, when he represented that he was a resident of and domiciled in Mississippi.
Thus, our de novo review of the record shows the following Mississippi contacts: 1) Mr. Wendling is a Mississippi resident, with a Mississippi address and Mississippi driver's license, 2) Mr. Wendling's UM insurance policy with Farm Bureau is a Mississippi contract, negotiated and purchased in Mississippi, 3) Mr. Wendling's vehicles are registered and principally garaged in Mississippi, 4) the tortfeasor, Mr. Chambliss, is a Mississippi resident, and 5) Mr. Chambliss's vehicle was registered in Mississippi. With regard to Louisiana contacts, the evidence establishes that, 1) the accident occurred in Louisiana, 2) Mr. Wendling's post-accident medical treatment was in Louisiana, and 3) suit was filed in Louisiana.
These contacts must be considered in light of the competing public policies and interests between the states of Louisiana and Mississippi in this case. The purpose of Louisiana's UM legislation is to promote full recovery for innocent tort victims. Champagne, 03-3211, p. 25, 893 So.2d at 788. Factors supporting Louisiana's strong interest in promoting full recovery for innocent automobile accident victims include: 1) the economic interests involved, including costs of medical care (which are more likely to be paid if there is sufficient insurance); 2) the significant involvement of the facilities of the Department of Public Safety and Corrections and the judicial system; and 3) the fact that the issuing states of the insurance policy often have credit and reduction provisions in their UM coverage, thereby reducing limits and serving to prevent full recovery by the innocent accident victims. Id. On the other hand, Mississippi has an interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof. The integrity of the contract is a substantial and real interest. Id.
After carefully reviewing the facts of this case, we agree with the trial court and conclude that Mississippi has a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana has in providing an insurance remedy to an out-of-state resident who was injured while in Louisiana. See Champagne, 03-3211 at p. 27, 893 So.2d at 788. Even were we to recognize that Mr. Wendling works in Louisiana and is regularly in the state, he nevertheless is a Mississippi resident who *339 applied for his insurance in Mississippi.[3] The application of Louisiana law to the insurance policy would result in the abrogation of a Mississippi contract. Moreover, Mr. Wendling's premium for UM coverage was based on the application of Mississippi law to the contract. See Champagne, 03-3211 at p. 27, 893 So.2d at 788. Therefore, under a conflict-of-laws analysis, Mississippi's interests would be the most seriously impaired if its law is not applied to the insurance policy.[4]
Accordingly, we find that Farm Bureau met its burden of proving that Mississippi has a more substantial interest in this case, and Mr. Wendling has failed to present sufficient factual support for his contentions. Therefore, Farm Bureau is entitled to summary judgment as a matter of law, and summary judgment was appropriately granted.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to Mr. Wendling.
AFFIRMED.
DOWNING, J., concurs and assigns reasons.
I agree with the result. Louisiana's uninsured motorist law, La. R.S. 22:1295 is simply inapplicable to this matter. By its own terms, the statute "govern[s] the issuance of uninsured motorist coverage in [Louisiana]." The policy at issue was not issued in Louisiana. It therefore does not come under the Louisiana statute. Accordingly, Louisiana has no legal interest to protect in this matter, while Mississippi's interest is clear.
Louisiana Revised Statutes 22:1295(a)(iii) provides one exception, which is inapplicable here, to the applicability of Louisiana's uninsured motorists law only to policies issued in this state. This subsection provides: "This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state." While the subject accident occurred in Louisiana, the majority opinion establishes that the plaintiff/appellant is not a resident of Louisiana. This exception, therefore, is inapplicable.
Consequently, while the majority's lucid and insightful choice-of-law analysis is interesting, it is dispensable and legally misleading.
NOTES
[1] Mr. Wendling represented in his petition that he was a Mississippi resident, but he also argues that he is a Louisiana resident, as more fully discussed herein.
[2] With regard to the Secretary of State documents and the petition for damages attached to Mr. Wendling's opposition, no affidavits were submitted or introduced attesting to the authenticity of these documents. Neither set of documents were certified or sworn to in any way and were simply attached to his memorandum. A party may not utilize unsworn and unverified documents as summary judgment evidence. Sanders v. J. Ray McDermott, Inc., 03-0064 p. 4 (La.App. 1 Cir. 11/7/03), 867 So.2d 771, 775. A document which is not an affidavit or sworn to in any way, or which is not certified or attached to an affidavit, is not of sufficient evidentiary quality to be given weight in determining whether there are remaining genuine issues of material fact. Boland v. West Feliciana Parish Police Jury, 03-1297, pp. 5-6 (La.App. 1 Cir. 6/25/04), 878 So.2d 808, 813, writ denied, 04-2286 (La. 11/24/04), 888 So.2d 231. Likewise, an unsworn, uncertified document simply attached to a memorandum may not properly be considered by the court in determining a motion for summary judgment. ASP Enterprises, Inc. v. Guillory, 08-2235, p. 11 (La.App. 1 Cir. 9/11/09), 22 So.3d 964, 971, writ denied, 09-2464 (La.1/29/10), 25 So.3d 834. Accordingly, at issue is whether we may consider these documents for summary judgment purposes. However, even if these documents were considered, the outcome herein would remain the same.
[3] Mr. Wendling argues that Champagne is distinguishable because, in that case, the injured party was transitorily within the borders of Louisiana.
[4] Whereas the Champagne case involved an automobile accident that occurred in Louisiana with a Mississippi plaintiff, we note that Triche v. Martin, 08-1220 (La.App. 1 Cir. 5/8/09), 13 So.3d 649, writ denied, 09-1284 (La.9/25/09), 18 So.3d 76, concerned an accident that occurred in Arkansas, which injured a Louisiana plaintiff. We therefore find Triche distinguishable.